IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

MARCH 1997 SESSION

FILED

May 30, 1997

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | No. 01C01-9605-CC-00186 |
| Appellee, | ) | |
| | ) | Houston County |
| v. | ) | |
| | ) | Honorable Robert E. Burch, Judge |
| | ) | |
| BASIL MATHIS, | ) | (Attempted First Degree Murder) |
| | ) | |
| Appellant. | ) | |

For the Appellant:                    For the Appellee:

Clifford K. McGown, Jr. (trial only)      John Knox Walkup
113 North Court Square              Attorney General and Reporter
Waverly, TN 37185                      and
        and                          Daryl J. Brand
Jim Sowell (appeal only)            Assistant Attorney General
118 North Main Street              450 James Robertson Parkway
Dickson, TN 37055                  Nashville, TN 37243-0493

                                  Dan Mitchum Alsobrooks
                                  District Attorney General
                                          and
                                  George C. Sexton
                                  Assistant District Attorney General
                                  Second Floor
                                  Humphreys County Courthouse
                                  Waverly, TN 37185

OPINION FILED: _____

AFFIRMED

Joseph M. Tipton
Judge

**O P I N I O N**

Defendant, Basil Mathis, was convicted by a jury in the Houston County Circuit Court of attempted first degree murder, a Class A felony, and sentenced to twenty (20) years in the Tennessee Department of Correction. In this appeal as of right, he raises the following issues for our review:

(1) whether the evidence was sufficient to sustain the conviction for attempted first degree murder;

(2) whether the trial court erred by admitting evidence of a pre-trial statement by a witness under the recorded recollection exception to the hearsay rule;

(3) whether the trial court erred in denying a motion for mistrial due to evidence of alleged prior threats by the defendant; and

(4) whether the trial court erred in denying a motion for mistrial due to the death of a juror's father just prior to deliberations.

We do not believe that any of these issues merit relief, and we affirm the judgment of the trial court.

## FACTS

On October 3, 1992, George Powell, Allen Ortago and Talmadge Agee were conferring along the side of a road in Houston County. Upon seeing Jerry Mathis and the defendant approaching in their vehicle, Powell placed a pistol in his pocket because he had a prior altercation with the Mathises. All five men engaged in casual conversation beside the road. The defendant picked up a pistol he saw in the back of Agee's truck. After he put the pistol back, Jerry Mathis picked it up and, without provocation, shot and killed Agee. Jerry Mathis shot several more times and wounded Ortago and Powell as they were fleeing.[1] After running some distance, Powell fired two shots and his pistol jammed. Powell continued to run and heard Jerry Mathis yell, "kill the son of a bitches, kill the son of a bitches!" Powell looked back and observed the defendant running toward the defendant's car and then saw the defendant come back around the vehicle. Powell heard five more shots. Powell was not hit by these shots, however.

---

[1] In a separate proceeding, Jerry Mathis was convicted of the murder of Talmadge Agee and the attempted murder of Allen Ortago and George Powell.

A neighbor heard eleven or twelve shots being fired. Some of the shots had a different sound, but it sounded as if all shots came from a small caliber weapon.

Wayne Powell, a cousin of Jerry Mathis and the defendant, talked to both of them shortly after the shooting. He stated that the defendant admitted to "shooting at the ones running off." The defendant also stated he was kidded by Jerry Mathis "for emptying his gun and not hitting anybody." Both Jerry Mathis and the defendant were laughing about it. Wayne Powell also confirmed that he had seen the defendant with a .38 caliber revolver on several prior occasions.

Scientific testing for gunshot residue conducted on the defendant revealed that he "could have fired, handled, or was near a gun when it fired."

The defense presented no proof at trial.

## SUFFICIENCY OF THE EVIDENCE

In Tennessee, great weight is given to the result reached by the jury in a criminal trial. A jury verdict accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. Id.; State v. Cabbage, 571 S.W.2d 832, 836 (Tenn. 1978). Moreover, a guilty verdict removes the presumption of innocence which the appellant enjoyed at trial and raises a presumption of guilt on appeal. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). The appellant has the burden of overcoming this presumption of guilt. Id.

Where sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most

favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or crimes beyond a reasonable doubt. T.R.A.P. 13(e); Jackson v. Virginia, 443 U.S. 307 (1979); State v. Abrams, 935 S.W.2d 399, 401 (Tenn. 1996). The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996).

In this case, there was ample evidence for the jury to convict the defendant of the attempted first degree murder of George Powell. Jerry Mathis, after firing several shots, was heard to yell, "kill the son of a bitches"; the defendant was seen going to his car and coming back around the car; and five more shots were then fired. Furthermore, the defendant's statements to Wayne Powell acknowledging his participation in the shooting were also before the jury. Certainly, the jury had sufficient evidence before it to conclude that the defendant acted intentionally, deliberately and with premeditation in an attempt to kill George Powell. This issue is without merit.

## RECORDED RECOLLECTION

The witness, Wayne Powell, testified on direct examination that he spoke with the defendant shortly after the shooting. The witness then stated that during the conversation the defendant did not say anything about shooting at anybody. The prosecutor then showed the witness his sworn statement that he had given to the Tennessee Bureau of Investigation (TBI). In this statement, Powell said that the defendant admitted to the shooting and had laughed about not being able to hit anyone. After reviewing this statement, Powell then testified that the defendant said that he had gone to the car to get his gun and shot once or twice at the "one running."

Subsequently, Powell stated that he could not remember all the statements he made to the TBI. He further testified that the statement he gave to

4

the TBI would have been correct, but that he was unable to "remember everything that's in there, today." At this point, the prosecutor read to Powell from his pretrial, written, sworn statement in which Powell said that the defendant had admitted to the shooting and was laughing about it.

The admissibility of this evidence is controlled by Rules 612 and 803(5), Tenn. R. Evid. The first rule concerns present recollection refreshed, and the latter concerns the past recollection recorded hearsay exception. There is a thin line between present recollection refreshed and past recollection recorded. Neil P. Cohen et al., Tennessee Law of Evidence, § 612.1, at 401 (3d ed. 1995).

In this case, when Powell first testified that the defendant had not admitted to the shooting, he was immediately shown his statement to the TBI. After reading that statement and without the statement being read into or admitted into evidence, Powell testified that the defendant had made such an admission. This evidentiary issue is controlled by Rule 612, present recollection refreshed. However, a writing can be used for this purpose only if a witness' memory requires refreshing. See, Tenn. R. Evid. § 612, Advisory Commission Comments. At the point Powell was shown the statement, it had not been established that his memory needed refreshing. Accordingly, the evidence at the time of its admission did not qualify under Rule 612. However, it became evident later in Powell's testimony that he had insufficient recollection at trial to testify fully as to what the defendant told him. Thus, the factual foundation needed to refresh the witness' memory was ultimately shown, a circumstance that would still justify the previous refreshing. See Tenn. R. Evid. 104(b).

Also, Powell's testimony reflects that he claimed little recollection at trial regarding what the defendant told him, even when shown his former statement. Moreover, it was apparent that his statement to the TBI was made at a time when the matter was fresh in his memory, and his statements accurately reflected his

5

knowledge at that time. It was at this point that the state read into evidence pertinent portions of the witness' statement to the TBI confirming that the defendant had made incriminatory admissions. The statement itself was not introduced as an exhibit. These circumstances met all of the requirements of Rule 803(5), the recorded recollection exception to the hearsay rule. There was a written record; it concerned a matter about which the witness once had knowledge; the witness at trial had an insufficient recollection to testify fully and accurately; the statement was "adopted" (signed) by the witness; it was made while the matter was fresh in his memory; and it accurately reflected his knowledge. Neil P. Cohen et al., Tennessee Law of Evidence, § 803(5).2, at 557-58 (3d ed. 1995).

The trial court's premature allowance of Powell's examination of his pretrial statement to refresh his recollection was completely harmless. T.R.A.P. 36(b). Likewise, because the content of the statement was read pursuant to Rule 803(5), Tenn. R. Evid., the evidence was properly before the jury. This issue is without merit.

## ALLEGED THREATS BY DEFENDANT

George Powell testified during direct examination that the deceased, Talmadge Agee, had a meeting with Jerry Mathis and the defendant "about them passing threats on to us . . . ." After an objection, the trial court in a jury-out hearing determined that the witness should not go into prior incidents. When the witness was subsequently asked why he had ejected the clip to his gun after firing the two shots, he stated ". . . since the time that I had heard about some threats . . . ." An objection was made mid-sentence and sustained, and the jury was given extensive instructions that the case must be decided on the basis of what happened on the day in question and not before that day. The defendant contends the trial court erred in not granting his request for a mistrial.

6

The decision of whether to grant a mistrial is within the sound discretion of the trial court. State v. McKinney, 929 S.W.2d 404, 405 (Tenn. Crim. App. 1996). This court will not disturb that decision absent a finding of abuse of discretion. State v. Adkins, 786 S.W.2d 642, 644 (Tenn. 1990); State v. Williams, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996). Furthermore, we presume that the jury followed the trial court's explicit instructions not to consider the inappropriate comment. State v. Smith, 893 S.W.2d 908, 923 (Tenn. 1994). In light of the limited nature of the offending testimony and the trial court's prompt curative instruction, the trial court did not abuse its discretion in refusing to grant a mistrial. See State v. Dick, 872 S.W.2d 938, 944 (Tenn. Crim. App. 1993).

## DEATH OF JUROR'S FATHER

At the conclusion of all the proof, the trial court adjourned after 4:00 p.m. on a Friday afternoon with instructions for the jury to return the following Tuesday morning. When the jury returned on Tuesday morning, the trial court learned of the death of one of the juror's father. The funeral was to be that afternoon. Upon inquiry by the trial court, the juror stated she would be able to deliberate as long as she could leave by 1:00 p.m. The trial court advised the juror that if they were not finished with deliberations by 1:00 p.m., they would stop so that the juror could attend the funeral. The trial court determined the juror was "perfectly competent" to continue to sit as a juror. The jury retired for deliberations at 10:50 a.m. and returned with its guilty verdict at noon.

The decision of whether to declare a mistrial when a juror is informed of the death of a member of his or her family rests within the sound discretion of the trial court. See State v. McCray, 614 S.W.2d 90, 93 (Tenn. Crim. App. 1981). In this case, the trial court questioned the juror as to her ability to continue, and she responded in the affirmative. The juror was informed that deliberations would cease at such time as she had to leave for the funeral. We conclude that the trial court's discretion was properly exercised in refusing to declare a mistrial.

7

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____Joseph M. Tipton, Judge

CONCUR:


_____
Jerry L. Smith, Judge


_____
Joe G. Riley, Judge

8