# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs April 25, 2001

## STATE OF TENNESSEE v. MELVIN E. BEARD

**Appeal as of Right from the Circuit Court for Williamson County**
**No. I-1098-346-A    Timothy L. Easter, Judge**

---

### No. M2000-02394-CCA-R3-CD - Filed August 30, 2001

---

The appellant, Melvin E. Beard, was convicted in the Williamson County Circuit Court of one count of the sale and delivery of less than .5 grams of crack cocaine, a class C felony.  The trial court sentenced the appellant to ten years incarceration in the Tennessee Department of Correction and imposed a fine of two thousand dollars ($2000).  On appeal, the appellant raises the following issues for our review: (1) whether the evidence at trial was sufficient to sustain the appellant's conviction; (2) whether the trial court erred in allowing the State to introduce the portion of an audio tape recording of the drug transaction that occurred outside the presence of the appellant; (3) whether the trial court erred in refusing to grant the appellant's motion for mistrial; and (4) whether the trial court erred in sentencing the appellant.  Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID H. WELLES and ALAN E. GLENN, JJ., joined.

Eric L. Davis, Franklin, Tennessee; and Lionel R. Barrett, Jr., Nashville, Tennessee, for the appellant, Melvin E. Beard.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Ronald L. Davis, District Attorney General; Derek K. Smith and Lee E. Dryer, Assistant District Attorneys General, for the appellee, State of Tennesssee.

### OPINION

### I.  Factual Background

On May 5, 1999, confidential informant Tracey Johnson,[1] who was assisting the Williamson County Sheriff's Department, called the appellant and made arrangements to buy crack

---

[1] The confidential informant's name is also spelled "Tracie Johnson" in various portions of the record.

cocaine. Prior to the drug purchase, Detective Barry Kincaid and Detective Jack Franz of the Williamson County Sheriff's Department attached a "body wire" to Johnson in order to monitor the proceedings and to make an audio tape recording of the transaction. The detectives also searched Johnson, Steve Barrett,[2] and the truck Johnson and Barrett would be using during the transaction, finding no contraband.

The transaction was originally scheduled to take place at the appellant's home; however, on the way to the appellant's home, Johnson and Barrett noticed the appellant's truck in the parking lot of the "Administrative Office Complex." The couple approached the appellant, and Johnson inquired about obtaining the crack cocaine. The appellant informed Johnson that he first had to "pick up his boy," but she should meet him at the "Tobacco Store" in a few minutes.

When the appellant met Johnson and Barrett at the "Tobacco Store," he was accompanied by Chris Johnson (hereinafter "Chris"). The appellant parked his truck beside the truck in which Johnson and Barrett were traveling. Johnson asked the appellant to give her a large rock of crack cocaine. Johnson gave the appellant forty dollars ($40), and, in exchange, the appellant handed Johnson two rocks of crack cocaine. During the course of the exchange, Johnson remembered that she had promised to bring the appellant some barbecued ribs from her workplace. Upon remembering this, Johnson mentioned to the appellant, "I'll have to get you those ribs later."

Following the transaction, the appellant was arrested, indicted, and tried on a charge of the sale and delivery of less than .5 grams of crack cocaine, a class C felony. A jury in the Williamson County Circuit Court found the appellant guilty of the charged offense. At the sentencing hearing, the State and the appellant agreed that the appellant qualified as a Range II multiple offender. Furthermore, the State adduced proof, via the pre-sentence report and the appellant's own testimony, regarding the numerous convictions littering the appellant's record. Additionally, the State established that the appellant's record contains at least one probation violation and revocation and that the instant offense was committed while the appellant was serving a community corrections sentence. Based upon this proof, the trial court sentenced the appellant to ten years incarceration in the Tennessee Department of Correction, the maximum sentence for a Range II offender convicted of a class C felony.

## II. Analysis
### A. Sufficiency of the Evidence

The appellant first challenges the sufficiency of the evidence supporting his conviction of the sale and delivery of less than .5 grams of crack cocaine. It is well-established law that, as the prevailing party in the trial court, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In connection with this issue, we recognize that questions

---

[2] Johnson testified that, at the time of the events, she and Barrett were dating. However, Johnson also testified that she and Barrett had married before the trial. Barrett was involved in the drug transaction because Johnson did not possess a driver's license and needed someone to drive her to the meeting place.

concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the jury as the trier of fact and not this court. State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990). Moreover, because a jury conviction essentially removes the presumption of innocence the appellant enjoyed at trial and replaces it with a presumption of guilt on appeal, the appellant bears the burden of demonstrating to this court why the evidence will not support the jury's findings. Id. In order to satisfy this burden, the appellant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e).

In order to sustain the appellant's conviction, the State needed to prove at trial that the appellant knowingly delivered or sold a controlled substance. Tenn. Code Ann. § 39-17-417 (a)(2) & (3) (1997). Notably, our code provides that cocaine is a schedule II controlled substance. See Tenn. Code Ann. § 39-17-408(b)(4) (1997). Additionally, Tenn. Code Ann. § 39-11-302(b) (1997) provides that "[a] person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result."

As evidence at trial, the appellant stipulated to the chain of custody of the rocks of crack cocaine obtained from Johnson and further stipulated to the Tennessee Bureau of Investigation (TBI) laboratory report, which revealed that the rocks are .2 grams of crack cocaine. Moreover, Johnson identified the appellant as the individual who, pursuant to a prior agreement, sold her the crack cocaine. Also, Detective Kincaid's trial testimony corroborated much of Johnson's testimony.

The appellant's main complaint, however, is not that the State failed to produce the foregoing evidence, but that the jury believed the testimony of Johnson. The appellant argues that, in light of Johnson's past convictions of passing bad checks and of criminal impersonation and because an assault charge against Johnson was dismissed the day after the drug transaction, Johnson was not credible as a witness. See State v. Tony A. Baker, No. 01C01-9711-CC-00537, 1999 WL 191584, at *2 (Tenn. Crim. App. at Nashville, April 8, 1999). The appellant argues that the proof demonstrated that Chris was actually the drug dealer and the appellant was simply present at the transaction to obtain the barbecued ribs. Essentially, the appellant implores this court to substitute its judgment for that of the jury. This we cannot do. State v. Jackson, 814 S.W.2d 740, 742-3 (Tenn. Crim. App. 1991); State v. Michelle Ferguson, No. E1999-01302-CCA-R3-CD, 2000 WL 1100223, at *10 (Tenn. Crim. App. at Knoxville, August 3, 2000). We reiterate that Tennessee law dictates that a determination regarding the credibility of witnesses lies within the purview of the jury. See State v. Millsaps, 30 S.W.3d 364, 368 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 2000) (stating that "the weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the trier[] of fact"). Therefore, because "the jury resolved the[] issue[] of credibility in favor of the State, [this] appellate court may not reconsider the jury's credibility assessment[]." State v. Carruthers, 35 S.W.3d 516, 558 (Tenn. 2000), cert. denied, __ U.S. ___, 121 S. Ct. 2600 (2001). Accordingly, we conclude that the State adduced sufficient evidence at trial to sustain the appellant's conviction.

B.  Audio-Taped Statement

The appellant's second and third issues concern an audio tape recording of the drug transaction that the State played for the jury. Prior to trial, the appellant moved to exclude all statements on the recording that were made outside the appellant's presence.  The trial court granted the motion and instructed the State to play only that portion of the recording from the preamble through the last encounter.  Regrettably, the State misunderstood this instruction and played a part of the recording where Johnson said, "We got it."  This statement occurred after the conclusion of the transaction and after the appellant had left the scene.  This part of the recording was excluded by the trial court's ruling and was impermissibly played for the jury.  After the State played this portion of the recording, the appellant moved for a mistrial.  However, the trial court ruled that, although the State violated the court's order by playing that portion of the recording, the error did not affect the defense and did not amount to an error egregious enough to require a mistrial.  The appellant then requested that the trial court give a curative instruction to the jury.  The trial court agreed and instructed the jury that, in determining the appellant's guilt, they were not to consider the portion of the recording in which Johnson said, "We got it."

The appellant first alleges that the trial court erred by allowing the State to play the contested portion of the recording, arguing that the State "grossly disregard[ed] the trial court's previous ruling."  Although we agree that the State impermissibly played a portion of the recording, there is nothing in the record to support the appellant's claim that the State's action was intentional. Rather, the record reflects that the contested portion of the recording was played only because the State misunderstood the court's ruling as to when the recording was to be stopped.  Moreover, the appellant made no effort to interrupt that portion of the recording, only asking for a mistrial at its conclusion.  This issue is without merit.

The appellant next contends that the trial court erred by denying the appellant's motion for a mistrial.  A mistrial is a procedural device that is only appropriate when the trial cannot continue without causing a miscarriage of justice.  State v. McPherson, 882 S.W.2d 365, 370 (Tenn. Crim. App. 1994).  In other words, there must be a "'manifest necessity'" for a mistrial to be declared.  State v. Millbrooks, 819 S.W.2d 441, 443 (Tenn. Crim. App. 1991).  In conducting our review of this issue, we note that this court has previously found that "[t]he decision of whether to grant a mistrial is within the sound discretion of the trial court.  This court will not disturb that decision absent a finding of abuse of discretion."  State v. Mathis, 969 S.W.2d 418, 422 (Tenn. Crim. App. 1997) (citations omitted).

In the instant case, the contested evidence consisted of Johnson's audio statement "We got it," referring to the completed purchase of crack cocaine.  However, the jury also heard Johnson testify that she bought the crack cocaine from the appellant.  Therefore, even though the State committed an error by allowing the jury to hear the contested statement, such error is clearly harmless in light of the overwhelming evidence of the appellant's guilt. Moreover, the "[o]bjection[] interposed by the appellant's counsel w[as] sustained and the trial judge gave [a] curative instruction[] to the jury.  It is presumed that the jury followed the trial judge's instruction[] not to consider inadmissible evidence."  Millbrooks, 819 S.W.2d at 443; see also State v. Melvin, 913

-4-

S.W.2d 195, 201 (Tenn. Crim. App. 1995). Accordingly, due to the harmless nature of the contested evidence and the prompt curative instruction given by the trial court, we conclude that the trial court did not abuse its discretion in denying the appellant's motion for a mistrial. See State v. Michael E. Wallace, No. M1999-02187-CCA-R3-CD, 2001 WL 208511, at *5 (Tenn. Crim. App. at Nashville, March 1, 2001).

## C. Sentencing

Finally, the appellant argues that the trial court erred in sentencing the appellant to ten years incarceration, the maximum sentence for a Range II offender convicted of a class C felony. As a preliminary matter, we observe that, because the trial court misapplied a mitigating factor, we will review the trial court's determinations de novo without a presumption of correctness. Tenn. Code Ann. § 40-35-401(d) (1997); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In any event, the burden is on the appellant to demonstrate the impropriety of his sentence. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

We must consider the following factors in the course of our de novo review: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statement by the appellant in his own behalf; and (7) the appellant's potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-102 and -103 (1997), -210 (2000 Supp.); see also Ashby, 823 S.W.2d at 168.

## 1. Length of Sentence

The appellant contends that "the trial court erred in weighing the enhanc[ement] factors . . . and in not finding the existence of any mitigating factors. . . ." Notably, the appellant does not contest the accuracy of the trial court's application of the enhancement factors, only the weight afforded to those factors. The trial court applied enhancement factor (1), finding that the appellant "has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range." Tenn. Code Ann. § 40-35-114(1) (1997). The appellant stipulated that he qualified as a Range II multiple offender. The appellant's criminal history consists of two felony convictions of driving while a habitual motor vehicle offender and thirteen misdemeanor convictions of various offenses. Although we may not consider the appellant's two felony convictions, as they are the basis for the appellant's Range II status, see Tenn. Code Ann. § 40-35-106(a)(1) (1997), we may take into account the appellant's numerous misdemeanor convictions in applying this factor. We agree with the trial court that enhancement factor (1) applies to the appellant.

Next, the trial court found that the appellant "has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community." Tenn. Code Ann. § 40-35-114(8). The pre-sentence report and the appellant's testimony at the sentencing hearing reveal that the appellant has previously violated his probation and that he committed the instant offense while on community corrections. This court has often explained that a trial court may not

consider the commission of the instant offense while on a form of release as proof of a *previous* history of unwillingness to comply with a sentence involving release in the community. See State v. Hayes, 899 S.W.2d 175, 185-186 (Tenn. Crim. App. 1995). However, such evidence may be considered by the trial court if it falls within the parameters of Tenn. Code Ann. § 40-35-114(13). Regardless, evidence in the appellant's record regarding at least one probation violation, as well as proof of the commission of prior offenses while on bond, is more than enough to warrant application of enhancement factor (8). See State v. Ealey, 959 S.W.2d 605, 613 (Tenn. Crim. App. 1997).

Lastly, the trial court applied enhancement factor (13), finding that the appellant committed the instant offense "while on any of the following forms of release status if such release is from a prior felony conviction: . . . (E) [a]ny other type of release into the community under the direct or indirect supervision of the department of correction or local governmental authority." Tenn. Code Ann. § 40-35-114(13). At the sentencing hearing, the appellant admitted that he committed the instant offense while he was serving a community corrections sentence for the felony offense of driving while an habitual motor vehicle offender. As we earlier stated, factor (13) is a proper enhancement factor for the trial court to consider in enhancing the appellant's sentence based upon such proof. Thus, we conclude that the trial court correctly applied enhancement factor (13) to the appellant. Cf. State v. Mark Crites, No. 01C01-9711-CR-00512, 1999 WL 61053, at *5 (Tenn. Crim. App. at Nashville, February 9, 1999).

The trial court found that no mitigating factors were applicable to the appellant. However, the appellant contends that the trial court erred in not finding the presence of the following mitigating factors: (1) the defendant's criminal conduct neither caused nor threatened serious bodily injury; (3) substantial grounds exist tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense; (4) the defendant played a minor role in the commission of the offense; and (11) the defendant, although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated that criminal conduct. Tenn. Code Ann. § 40-35-113(1), (3), (4), and (11) (1997).

The appellant has made no argument as to how mitigating factor (3) applies to the appellant's conduct in this case, and we conclude that it does not apply. Therefore, we agree with the State that the trial court did not err in failing to find the existence of mitigating factor (3). Additionally, at the appellant's sentencing hearing the appellant argued, in support of mitigating factors (4) and (11), that the evidence clearly showed that the drug dealer in this case was Chris Johnson and that the appellant was merely accompanying him. We disagree. The testimony of confidential informant Tracey Johnson reveals that she called the appellant to arrange a drug purchase, later met the appellant at the tobacco store, and bought forty dollars ($40) worth of crack cocaine from the appellant. We conclude that neither mitigating factor (4) nor mitigating factor (11) apply to the appellant. See State v. Thomas Gardner, No. 01C01-9302-CR-00060, 1993 WL 311539, at *2 (Tenn. Crim. App. at Nashville, August 12, 1993).

The appellant further contends that the trial court erred in failing to find that the appellant's "criminal conduct neither caused nor threatened serious bodily injury." Tenn. Code Ann.

§ 40-35-113(1). The application of mitigating factor (1) in cases involving cocaine has been an issue of some debate in our appellate courts. Recognizing this controversy, our supreme court recently "reject[ed] a *per se* exclusion of this mitigating factor in cocaine *possession* cases." State v. Peter Allen Ross, No. W1999-00972-SC-R11-CD, 2001 WL 760100, at *12 (Tenn. at Jackson, July 9, 2001) (publication pending) (emphasis added). However, the court also stated that if

> the appellant actually *sold or attempted to sell* the drug at the time of the offense . . . then the dangerous nature of the drug, combined with the dangerous nature of many drug transactions, may . . . indeed support[] the trial court's rejection of this factor as constituting a threat of serious bodily injury.

Id. at *11 (emphasis added).

Turning to cases from this court for further guidance, we note that, in many of the cases rejecting the application of mitigating factor (1) to the sale of cocaine, this court has placed heavy emphasis upon the large amount of cocaine sold by a defendant. See State v. Roger D. Pulley, No. 01C01-9501-CC-00013, 1995 WL 555060, at *4 (Tenn. Crim. App. at Nashville, September 20, 1995); Johnny Arwood v. State, No. 335, 1991 WL 73957, at *4 (Tenn. Crim. App. at Knoxville, May 9, 1991). However, in the instant case, the appellant was convicted of selling .2 grams of crack cocaine, a relatively small amount. Therefore, we find that the trial court should have applied mitigating factor (1) in determining the appellant's sentence. See State v. Michael Dean Tate, No. 03C01-9712-CR-00553, 1999 WL 39024, at *3 (Tenn. Crim. App. at Knoxville, January 28, 1999); State v. Johnny Ray Christman, No. 01C01-9211-CC-00361, 1993 WL 335420, at *2 (Tenn. Crim. App. at Nashville, September, 2, 1993). Regardless, we also determine that this mitigating factor is entitled to little weight. See Baker, No. 01C01-9711-CC-00537, 1999 WL 191584, at *3. Considering the number and strength of the enhancement factors, we conclude that the trial court correctly sentenced the appellant to ten years incarceration in the Tennessee Department of Correction.

## 2. Probation

The appellant also argues that the trial court should have granted him probation. Generally, an appellant is eligible for probation if the sentence actually imposed is eight years or less. Tenn. Code Ann. § 40-35-303(a) (1997). Because we agree with the trial court that a ten year sentence of incarceration is appropriate, the appellant is therefore ineligible for probation. See State v. Smith, 910 S.W.2d 457, 462 (Tenn. Crim. App. 1995). This issue is without merit.

## 3. Consecutive Sentencing

Lastly, the appellant complains that the trial court erred in sentencing him to serve this sentence consecutive to a sentence for aggravated perjury. Tenn. Code Ann. § 40-35-115(b) (1997) provides that a trial court may impose consecutive sentencing if the appellant meets one of the criteria contained therein. Moreover, if the trial court classifies the appellant as a dangerous offender, see Tenn. Code Ann. § 40-35-115(b)(4), the court must also find that the sentence reasonably relates to the severity of the appellant's offenses and that confinement is necessary to protect society from further criminal conduct by the appellant. See State v. Lane, 3 S.W.3d 456,

460-61 (Tenn. 1999); State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995). However, contrary to the appellant's argument, because the trial court did not find that the appellant was a dangerous offender, the trial court was not obligated to apply the Wilkerson factors. Lane, 3 S.W.3d at 460-61.

The trial court imposed consecutive sentencing because the appellant "is an offender whose record of criminal activity is extensive." Tenn. Code Ann. § 40-35-115(b)(2). This court has previously found that "[e]xtensive criminal history alone will support consecutive sentencing." State v. Adams, 973 S.W.2d 224, 231 (Tenn. Crim. App. 1997). The pre-sentence report reflects, and the appellant admits, that his criminal record consists of two prior felony convictions and thirteen misdemeanor convictions. See State v. Pettus, 986 S.W.2d 540, 545 (Tenn. 1999); State v. Reginald Tyrone Donnell, No. M1999-02184-CCA-R3-CD, 2000 WL 1763685, at *14 (Tenn. Crim. App. at Nashville, November 30, 2000); State v. Danny Ray Trull, No. M1999-00036-CCA-R3-CD, 2000 WL 337592, at *3 (Tenn. Crim. App. at Nashville, March 31, 2000). We conclude that, with this history, the appellant qualifies for consecutive sentencing under Tenn. Code Ann. § 40-35-115(b)(2).

### III. Conclusion
Finding no reversible error, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE