# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

**FILED**

**January 28, 1998**

**Cecil W. Crowson
Appellate Court Clerk**

CALVIN E. MITCHELL, )
)
    Plaintiff/Appellant, )
)
)   Davidson Circuit
VS. )   No. 95C-2496
)
)
WAYNE ARCHIBALD and )
METROPOLITAN GOVERNMENT )   Appeal No.
OF NASHVILLE AND )   01A01-9706-CV-00264
DAVIDSON COUNTY, )
)
    Defendant/Appellee. )

APPEAL FROM THE DAVIDSON COUNTY CIRCUIT COURT
AT NASHVILLE, TENNESSEE

THE HONORABLE MICHAEL MONDELLI, JUDGE BY INTERCHANGE

For Plaintiff/Appellant:

Mark M. Mizell
LLOYD T. KELSO & ASSOCIATES
Nashville, Tennessee

For Defendant/Appellee:

James L. Murphy, III
Director of Law

Lizabeth D. Foster
Metropolitan Attorney

## AFFIRMED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# **O P I N I O N**

This appeal involves the admissibility of an audio recording of the statement of an eyewitness to an accident involving a bicyclist and a city-owned dump truck. The bicyclist filed suit against the city and the driver of the truck in the Circuit Court for Davidson County. When the only disinterested eyewitness to the accident disclosed during the trial that intervening brain surgery had impaired his memory, the trial court permitted the defendants to introduce an audio recording of a statement given by the witness less than one week after the incident. The trial court, after comparing the fault of the respective parties, entered a judgment for the defendants. On this appeal, the bicyclist challenges the admissibility of the tape recorded statement and the evidentiary foundation of the trial court's decision. We have determined that the trial court's decision to admit the audio recording of the eyewitness's statement was not reversible error and that we have no basis for disregarding the trial court's determination of the weight of the evidence.

## I.

Calvin E. Mitchell was riding his bicycle north on Second Avenue in Nashville on August 16, 1994. At the same time, a city dump truck with an attached trailer driven by Wayne Archibald was also driving north on Second Avenue. The parties' accounts of what transpired after Mr. Archibald passed Mr. Mitchell differ. Mr. Mitchell testified that Mr. Archibald returned to the northbound lane of Second Avenue too quickly after passing him and that he lost control of his bicycle when he became trapped between the truck and the curb. Mr. Archibald testified that he returned to the northbound lane approximately one block after passing Mr. Mitchell. He also stated that he activated his turn signals prior to returning to the northbound lane and that he did not see Mr. Mitchell in his rearview mirror. Mr. Mitchell was thrown to the pavement when his bicycle came into contact with the trailer's wheels. He sustained injuries to his back, shoulder, and knee as well as property damage to his bicycle.

Albert Gardner was also driving north on Second Avenue when Mr. Archibald passed Mr. Mitchell. He was the only eyewitness to the accident and had a clear view because he was traveling behind Mr. Mitchell and Mr. Archibald. In February 1995,

Mr. Gardner underwent surgery to repair a burst aneurysm in his brain, and as a result of the aneurysm and surgery lost his memory of the accident. When he testified in March 1997 that he had no independent recollection of the accident, the trial court permitted the defendants, over Mr. Mitchell's objection, to play an audio recording of a telephone interview between Mr. Gardner and a lawyer for the city that took place six days after the accident.

Mr. Gardner stated during his recorded interview that Mr. Archibald did not attempt to return to the northbound lane until he was fifty or sixty yards past the point where he had overtaken Mr. Mitchell. He also stated that Mr. Mitchell suddenly sped up after the dump truck passed him and that Mr. Mitchell "flew up beside" the trailer and was in the blind spot in the truck's rearview mirrors when Mr. Archibald returned to the northbound lane. Mr. Gardner confirmed that Mr. Archibald had activated his turn signals before he returned to the northbound lane and that Mr. Mitchell was thrown from his bicycle when the bicycle came into contact with the trailer's wheels. The trial court ruled from the bench that Mr. Mitchell contributed to his injuries in an amount sufficient to bar recovery.

## II.
### THE ADMISSIBILITY OF MR. GARDNER'S RECORDED STATEMENT

Mr. Mitchell challenges the admissibility of Mr. Gardner's recorded statement on numerous grounds. He has, however, waived all but two of these grounds by failing to assert them at trial. *See* Tenn. R. App. P. 36(a); Tenn. R. Evid. 103(a)(1); *State v. Coker*, 746 S.W.2d 167, 173 (Tenn. 1987); *Monteeth v. Caldwell*, 26 Tenn. 13, 13-14 (1846); *Cheek v. Fox*, 7 Tenn. Civ. App. (Higgins) 160, 184 (1917); Neil P. Cohen et al., *Tennessee Law of Evidence* § 103.3, at 8 (3d ed. 1995). The two grounds we will consider involve Mr. Mitchell's objections that opposing counsel did not notify him in advance of her intent to use Mr. Gardner's recorded statement and that the recorded statement is hearsay.[1]

---

[1]At trial, Mr. Mitchell's lawyer objected to the introduction of Mr. Gardner's recorded statement because it was hearsay and because he had been unfairly surprised by the defendants' failure to provide him with advance notice of the recording's contents. In addition to these grounds, Mr. Mitchell asserts on appeal that (1) the recorded statement contains improper statements of opinion, (2) that the recorded statement contains statements that were not made on Mr. Gardner's personal knowledge, and (3) that the recorded statements are tainted by the improper leading questions and statements by the city attorney who interviewed Mr. Gardner.

## A.

Mr. Mitchell first argues that the lawyers representing the Metropolitan Government violated Rule 13 of the Davidson County Local Rules of Practice by failing to notify him prior to trial that they intended to rely on Mr. Gardner's recorded statement in lieu of his live testimony.[2] This argument overlooks the fact that Rule 13 did not apply to this case. Rule 13, by its own terms, "applies in civil and criminal jury cases." It had no application here because this case was simply a bench trial under the Governmental Tort Liability Act.

Mr. Mitchell's "unfair surprise" argument has little merit aside from his unwarranted reliance on Rule 13. All parties knew or should have known that Mr. Gardner was an eyewitness to this accident. He underwent brain surgery more than two years before the trial, and during this time the lawyers for all parties were free to question him about his memory of the incident and the substance of his testimony. The record contains no indication that Mr. Mitchell's lawyer ever attempted to interview Mr. Gardner prior to trial or that the city's lawyers failed to respond appropriately to discovery requests concerning the substance of Mr. Gardner's testimony or the existence of any statements he might have given. Because Mr. Mitchell's lawyer's surprise is his own doing, we find nothing reversibly unfair about it.[3]

## B.

Mr. Mitchell also argues here as he did at trial that Mr. Gardner's recorded statement was hearsay and that it should not have been admitted because Mr. Gardner was beyond the reach of effective cross-examination. The Metropolitan Government does not deny that Mr. Gardner's recorded statement is hearsay but asserts that it is admissible under Tenn. R. Evid. 803(5) as a recorded recollection. The trial court agreed with the Metropolitan Government's position, and so do we.

---

[2]Rule 13 requires parties who intend to offer an audio or video recording as evidence to provide written notice to adversary counsel ten days prior to trial. The rule also permits adversary counsel to review and obtain a copy of the recording and provides for a motion in limine to resolve disputes concerning all or any portion of the recording.

[3]Mr. Mitchell's complaint that his lawyer was prevented from effectively objecting to inadmissible statements in Mr. Gardner's recorded statement is undermined by his lawyer's failure to ask for an opportunity to review the recording before it was played or to raise these objections in a proper Tenn. R. Civ. P. 59 motion.

Hearsay testimony is inadmissible in judicial proceedings unless it fits within one of the recognized exceptions to the hearsay rule. *See* Tenn. R. Evid. 802; *Estes v. Woodlawn Mem'l Park, Inc.*, 780 S.W.2d 759, 764 (Tenn. Ct. App. 1989). One recognized exception to the hearsay rule relates to the recorded recollections of a witness who is no longer able to recall the substance of his or her testimony. Tenn. R. Evid. 803(5) provides:

> A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness's memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

Unlike writings used to refresh a witness's present recollection under Tenn. R. Evid. 612, recorded recollections admitted in accordance with Tenn. R. Evid. 803(5) are themselves substantive evidence. *See Leach v. State*, 420 S.W.2d 641, 642 (Tenn. 1967).

To utilize Tenn. R. Evid. 803(5)'s recorded recollection exception, a party must (1) provide a memorandum or record[4]; (2) about a matter that the witness once had knowledge of; (3) establish that the witness now has insufficient recollection to testify fully and accurately; (4) that the statement was made or adopted by the witness; (5) while fresh in the witness's memory, and; (6) that the record accurately reflects the witness's knowledge. *See State v. Mathis*, No. 01C01-9605-CC-00186, 1997 WL 284582, at *3 (Tenn. Crim. App. App. May 30, 1997) (Tenn. R. App. P. 11 application denied, Pet. Reh. pending); Neil P. Cohen et al., *Tennessee Law of Evidence* § 803(5).2, at 557-58 (3d ed. 1995). The purpose of these requirements is to minimize the danger that the mind will "'remember' something that never happened." *Martin v. Caution*, No. 85-303-II, 1986 WL 2868, at *4 (Tenn. Ct. App. March 7, 1986) (No Tenn. R. App. P. 11 application filed).

The audio recording of Mr. Gardner's statement meets Tenn. R. Evid. 803(5)'s requirements as a past recollection recorded. The record was in the form of an audio recording and a written transcript of the recording. Mr. Gardner had first-hand

---

[4]The record may be a tape recording. *See United States v. Sollars*, 979 F.2d 1294, 1298 (8th Cir. 1992); *State v. Marcy*, 680 A.2d 76, 82 (Vt. 1996); 2 *McCormick on Evidence* § 281 (John W. Strong 4th ed. 1992).

knowledge of the accident because he witnessed it as it happened. He testified that he was unable to testify fully and accurately about the accident because the aneurysm and subsequent brain surgery had impaired his memory, but he also testified that he remembered giving the interview several days after the accident while it was still fresh in his mind. Finally, Mr. Gardner testified that when he gave the interview, his memory was fine and that his statements accurately reflected his knowledge at the time. While the attorney for the Metropolitan Government could have laid a more thorough foundation for the introduction of Mr. Gardner's recorded statement, we find that the trial court did not err by admitting it into evidence.

## III.
### RE-WEIGHING THE EVIDENCE ON APPEAL

Mr. Mitchell also invites this court to re-weigh the evidence and to make our own independent determination of the witness's credibility because the official record of the proceedings is in a videotape rather than a written transcript.[5] We decline this invitation.

One of the most time-honored principles of appellate review is that trial courts are best situated to determine the credibility of the witnesses and to resolve factual disputes hinging on credibility determinations. *See State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990); *Tenn-Tex Properties v. Brownell-Electro, Inc.*, 778 S.W.2d 423, 425-26 (Tenn. 1989). Accordingly, appellate courts routinely decline to second-guess a trial court's credibility determinations unless there is concrete, clear, and convincing evidence to the contrary. *See Bingham v. Dyersburg Fabrics Co., Inc.*, 567 S.W.2d 169, 170 (Tenn. 1978); *Thompson v. Crewell Indus. Supply, Inc.*, 936 S.W.2d 955, 957 (Tenn. Ct. App. 1996).

The most often cited reason for this principle can be traced to the fact that trial judges, unlike appellate judges, have an opportunity to observe the manner and demeanor of the witnesses while they are testifying. *See Bowman v. Bowman*, 836

---

[5]Tenn. S. Ct. R. 26 empowers the Tennessee Supreme Court to authorize the use of videotape equipment to preserve the official record of court proceedings. The court entered an order designating the Sixth Circuit Court of the Twentieth Judicial District as a court authorized to use videotape equipment. *See In re Order for Use of Videotape Equipment to Record Court Proceedings* (Tenn., Oct. 31, 1996). Over four years ago, the court authorized the use of videotape equipment in the Circuit Court for the Twenty-First Judicial District.

S.W.2d 563, 566 (Tenn. Ct. App. 1991). There are, however, other reasons for this principle. As the United States Supreme Court has observed:

> The trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise. Duplication of the trial judge's efforts in the court of appeals would very likely contribute only negligibly to the accuracy of fact determination at a huge cost in diversion of judicial resources. In addition, the parties to a case on appeal have already been forced to concentrate their energies and resources on persuading the trial judge that their account of the facts is the correct one; requiring them to persuade three more judges at the appellate level is requiring too much.

*Anderson v. City of Bessemer City*, 470 U.S. 564, 574-75, 105 S. Ct. 1504, 1512 (1985).

The advisory committee note to Fed. R. Civ. P. 52(a), which requires that deference be given to the trial judge's opportunity to judge the credibility of witnesses, lists three important policy concerns behind the rule: (1) upholding the legitimacy of the trial courts to litigants; (2) preventing an avalanche of appeals by discouraging appellate retrial of factual issues, and (3) maintaining the allocation of judicial authority. The policy underpinnings of Fed. R. Civ. P. 52(a) advance the public's interests in stability and judicial economy, and we view them as equally important to Tennessee's citizens and courts.

The policy reasons disfavoring appellate weighing of credibility are buttressed by practical considerations. Most important, videotapes of trial proceedings provide only a narrow view of the trial court proceedings. The current automated cameras focus only on the speaker and cannot record everything going on in the courtroom that the trial court can see. Thus, while the video recording may capture a witness while he or she is testifying, the recording does not preserve the conduct of other participants in the trial or even spectators in the courtroom that may be the cause of the witness's demeanor, voice inflections, or body language.

In addition to the limited scope of the proceedings preserved on videotape, the limited availability of videotape equipment and the possibility of equipment failure militate against appellate credibility determinations. Videotape equipment is currently being used in only two of the over one hundred and fifty state courts, and

thus, a vast majority of the trial court proceedings are presently not being recorded on videotape. Permitting a small number of litigants to obtain broader appellate review of credibility determinations will unfairly provide these litigants with an additional appellate ground that will not be available to others. In a similar vein, equipment malfunction or failure could further reduce the availability of broader appellate review. While these malfunctions or failures are rare, they could result in incomplete video records or poor quality or inaudible recordings that will also undermine broader appellate credibility determinations. *See generally*, Fredric I. Lederer, *Technology Comes to the Courtroom, And . . .*, 43 Emory L.J. 1095, 1111-13 (1994); Don J. DeBenedictis, *Excuse Me, Did You Get All That?*, A.B.A. J., May 1993, at 85-86.

Embarking on independent appellate credibility determinations would be a drastic change in the settled principles of appellate review.[6] At least one intermediate appellate court has specifically declined to make these determinations, *see Moustakas v. Dashevsky*, 30 Cal. Rptr. 2d 753, 754 (Ct. App. 1994), and two other intermediate appellate courts have strongly disapproved the practice because it frustrates effective appellate review. *See Travieso v. Golden*, 643 So.2d 1134, 1136 (Fla. Dist. Ct. App. 1994); *Shillington v. K-Mart Corp.*, 402 S.E.2d 155, 157 (N.C. Ct. App. 1991). We share these concerns and, accordingly, decline to alter our long-standing deference to the trial court's credibility determinations in videotaped trial proceedings.[7]

## IV.

We affirm the judgment and remand the case to the trial court for whatever further proceedings may be required. We tax the costs of this appeal to Calvin E. Mitchell and his surety for which execution, if necessary, may issue.

---

[6] Several authors have predicted that the use of videotape records will prompt appellate judges to make credibility determinations. *See* Adele Hedges & Robert Higgason, *Videotaped Statements of Fact on Appeal: Parent of the Thirteenth Juror*, 33 Hous. Law. 24 (July/Aug. 1995); William E. Hewitt, *Video Court Reporting: A Primer for Trial and Appellate Judges*, 31 Judge's J. 2, 6 (Winter 1992).

[7] Our decision not to expand the appellate court's existing role in weighing and determining witness credibility does not mean that videotape records cannot be used either to point out other errors in the trial proceedings, *see Deemer v. Finger*, 817 S.W.2d 435, 436-37 (Ky. 1991), or to provide concrete, clear, and convincing evidence that a trial court's conclusions regarding a witness's credibility were erroneous.

_____
WILLIAM C. KOCH, JR., JUDGE


CONCUR:


_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION


_____
SAMUEL L. LEWIS, JUDGE