# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### May 4, 2000 Session

## STATE OF TENNESSEE v. GUY BINETTE

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Hamilton County**
**No. 216632    Rebecca Stern, Judge**

---

**No. E1998-00236-SC-R11-CD - Filed October 5, 2000**

---

JANICE M. HOLDER, J., dissenting.

I respectfully dissent. There is no need to adopt a new standard to review the videotaped evidence presented in this case. I would hold that an application of the standard of review traditionally applied in Tennessee establishes that the officer in this case had reasonable suspicion to stop Binette.

The majority reviews the videotaped evidence in this case de novo with no presumption of correctness afforded to the trial court. The standard of review is contrary to our decision in State v. Odom, 928 S.W.2d 18 (Tenn. 1996). In Odom, we held that a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise. See id. at 23. The majority rejects this standard based on its conclusion that the trial court was "in no better position" than the appellate court to review the evidence because there are no issues of credibility.

Contrary to the majority's position, there are credibility issues in this case. Questions of credibility arise whenever opposing evidence is presented. See, e.g., Thomas v. Lloyd, 17 S.W.3d 177, 187 (Mo. Ct. App. 2000) ("A reviewing court's deference to a trial court's resolution of credibility is not limited to the issue of witness credibility, but also to conclusions of the trial court."). The trial court had before it three competing descriptions of the events: the officer's subjective interpretation as stated in the audio portion of the videotape, the defendant's subjective explanation, and the videotape's record of the event. Even if we assume that the trial court based its decision solely on the videotaped evidence, the trial court did so only after determining that the videotape was a more credible version of the facts than the explanation offered by the defendant. Trial courts are not otherwise entitled to disregard admissible evidence. Cf. State v. Hornsby, 858 S.W.2d 892, 895 n.2 (Tenn. 1993) (allowing appellate courts to disregard testimony of facts that are "inherently impossible and absolutely at variance with well-established and universally recognized physical laws" because it is "not credible evidence.") (quoting Nelms v. Tennessee Farmers Mut. Ins. Co., 613 S.W.2d 481, 483 (Tenn. Ct. App. 1978)).

The majority relies upon the "deposition rule" enunciated in workers' compensation cases. The rationale for the "deposition rule" is that deposition evidence reaches the appellate court in the same form in which it was presented to the trial court. Accordingly, the trial court occupies no better position than the appellate court in reviewing and interpreting that evidence. The majority has determined that the videotape is in a similar posture – it comes to this Court in a form identical to that presented to the trial court. The majority therefore concludes that we are not bound by the trial court's interpretation of the videotape because the trial court was not required to determine credibility.

Strong policy reasons exist, however, for presuming a trial court's factual findings correct, even where credibility is not an issue. In Mitchell v. Archibald, 971 S.W.2d 25 (Tenn. Ct. App. 1998), the Court of Appeals was asked by a party to consider de novo the credibility of a witness's testimony because that testimony was on videotape. The court declined to do so, citing precedent that the trial court is in the best position to observe the witness and to determine that witness's credibility. The court also noted that there are reasons, unrelated to credibility, for deferring to the trial court's factual findings:

> The trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise. Duplication of the trial judge's efforts in the court of appeals would very likely contribute only negligibly to the accuracy of fact determination at a huge cost in diversion of judicial resources. In addition, the parties to a case on appeal have already been forced to concentrate their energies and resources on persuading the trial judge that their account of the facts is the correct one; requiring them to persuade three more judges at the appellate level is requiring too much.

Id. at 29 (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 574-75 (1985) (internal quotations omitted)).

It is telling that three different judicial interpretations of the facts of this case were elicited by three independent reviews of the videotape at each level of review. The majority's opinion now becomes the "correct" interpretation. But cf. Anderson, 470 U.S. at 574 (stating "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."). By failing to give any presumption of correctness to the trial court, the majority essentially endorses a "last in line is right" rule.

If a trial court is truly in "no better position" than the appellate court to evaluate evidence, then the rationale for eliminating the presumption of correctness of the trial court's findings is that the true facts are more likely to be gleaned from three interpretations of the evidence (at the intermediate appellate level), and eventually five interpretations of the evidence (at the Supreme Court level), than from the trial court's single interpretation. This rationale ignores a fact that Mitchell and Anderson recognize: trial judges are the expert fact-finders. I am convinced that trial

courts are in a better position than appellate courts to make findings of fact, irrespective of the form of the evidence.

Giving a presumption of correctness to the trial court in this case, I would hold that the evidence supports a finding that the stop in this case was based upon reasonable suspicion. Under Odom, appellate courts give a presumption of correctness to the trial court's factual findings as long as the record does not preponderate against those findings. See Odom 928 S.W.2d at 23. Application of the law to the facts is de novo. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

The only factual finding made on the record in this case was that there was "fairly significant weaving." Under Odom, I presume this finding to be correct. This presumption stands so long as the evidence in the record does not preponderate against it.

I cannot agree with the majority opinion in that there is no "evidence of pronounced weaving or hard swerving by Binette." The officer states in the audio component of the videotape that "the vehicle just made a hard swerve."[1] The officer was in a good position to judge the severity of the swerve, which was barely caught on camera. Further, Binette's vehicle does weave from side to side within his lane of travel throughout the video, albeit in slow repetition. Thus, I would hold that the record does not preponderate against the trial court's finding of "fairly significant weaving."

The remainder of the evidence includes the officer's assertion that Binette had "already crossed the yellow line twice" and that Binette's "vehicle is running about 60 miles per hour in a 45 mile per hour zone." The trial court did not make findings of fact as to these statements. We must, however, consider the entire record to determine whether the officer had reasonable suspicion to stop Binette. The officers's statements were admissible evidence.[2] The statements, therefore, may be considered in determining whether the officer had reasonable suspicion.

The trial court's specific finding of fact and the remainder of the evidence, including the trial court's implicit rejection of Binette's version of the facts, convinces me that the officer had reasonable suspicion that Binette was driving while impaired. I would therefore affirm.

_____
JANICE M. HOLDER, JUSTICE

---

[1] I cannot agree with the majority's assumption that the trial court "bas[ed] its decision solely on the visual portion of the videotape." The trial court's order specifically references the point at which "the blue lights were activated." That event can be determined only from the officer's statement that was recorded on the videotape.

[2] Both parties stipulated to the admissibility of the videotape in its entirety. The officer's hearsay statements may thus be considered as substantive evidence. See State v. Smith, 24 S.W.3d 274 (Tenn. 2000).