IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 18, 2019 Session

## YOLANDA CARTER v. MAURICE BUTLER

**Appeal from the Chancery Court for Shelby County**
**No. CH-18-0162     Jim Kyle, Chancellor**

_____

**No. W2019-00175-COA-R3-CV**

_____

This appeal involves a dispute related to the interpretation of a lease purchase agreement. However, because the trial court did not make sufficient findings of facts and conclusions of law, we are unable to conduct a meaningful appellate review. Accordingly, we vacate the order and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Vacated and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY W. ARMSTRONG, J., joined.

Richard L. Rikard, Germantown, Tennessee, for the appellant, Maurice Butler.

Scottie O. Wilkes, Memphis, Tennessee, for the appellee, Yolanda Carter.

## MEMORANDUM OPINION[1]

_____

[1] Rule 10 of the Rules of the Court of Appeals provides as follows:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

# I.    FACTS & PROCEDURAL HISTORY

Maurice Butler was a licensed real estate agent and owner of two businesses that provided services to disabled individuals, including access to affordable housing.  In April 2013, Yolanda Carter accompanied her sister to view a property owned by Mr. Butler.  Ms. Carter's sister was an employee of Mr. Butler and was interested in renting one of his properties.  Ms. Carter, her sister, and Mr. Butler met at a home located at 3200 Cherrywood Cove in Memphis, Tennessee.  After viewing the property and discussing the amount of rent, Ms. Carter's sister indicated that she could not afford to rent the home.  Ms. Carter then inquired whether Mr. Butler had any properties for sale.  Ms. Carter also informed Mr. Butler that she had a limited budget, as she had no job or credit and intended to file for disability.  She further explained that she would be unable to secure a traditional loan.  Shortly thereafter, Ms. Carter and Mr. Butler executed a one page document that he drafted entitled "Lease Purchase Agreement for 3200 Cherrywood Cove Memphis TN, 38128."  Throughout the document, Ms. Carter is referenced as "tenant" and Mr. Butler as "landlord."[2]  However, the agreement was signed by Ms. Carter as "Buyer, Yolanda Carter."  In accordance with the agreement, Ms. Carter agreed to pay Mr. Butler $1,000 per month for four and one-half years, or fifty-four months.  The agreement contained a provision stating that it began on April 23, 2013 and would end on October 23, 2017.  It further provided that if Ms. Carter defaulted, the "security deposit" of $10,000[3] would be forfeited.

Mr. Butler contends that there was another document that contained options for purchase of the property that he prepared and discussed with Ms. Carter when the lease agreement was signed; Ms. Carter denies this.  The second document was not referenced in the lease agreement, nor was it initialed or signed by either party.  The document was entitled "Lease Option for 3200 Cherrywood Cove Memphis 38128."  The type-written provisions of the document simply stated:  "1) Purchase of $65,000 2) Financing search start 3 months prior to lease expire 3) Sales contract drawn at end of lease to address Cnty [sic] City taxes and attorney fees 4) Sales option extended with buyer completing lease as agreed[.]"  The document also contained hand-written notes, some of which are illegible, that Mr. Butler described as "doodling."

In March 2016, after she had been approved for disability and received a lump-sum back-payment, Ms. Carter contacted Mr. Butler about paying the balance in full.  Mr. Butler responded by letter, stating that he had reviewed the "lease purchase."  He further stated that the agreement provided that the monthly payments would continue until October 23, 2017, and that the parties needed "to follow the agreement."  In October 2017, Ms. Carter paid what she considered to be the final payment on the property.  It is

---

[2] Mr. Butler is referred to as "Landlord/Sellor" [sic] one time in the document.

[3] Mr. Butler testified at the July 2018 hearing that he noted the $10,000 as a "security deposit" on the agreement but he should have referenced the payment as a "non-refundable down payment."

undisputed that Ms. Carter made all monthly payments from April 2013 until October 2017. After that time, Ms. Carter and Mr. Butler exchanged several text messages disputing the terms of the agreement.

In January 2018, Mr. Butler filed a forcible entry and detainer warrant in general sessions court, demanding possession of the property and unpaid rent.[4] One month later, Ms. Carter filed a complaint in chancery court seeking specific performance, damages for breach of contract, and a lien lis pendens on the property. She also sought an injunction to prevent Mr. Butler from prosecuting his general sessions claim. Subsequently, a consent order was entered transferring the general sessions case to chancery court.[5]

A hearing was held in July 2018. The only witnesses were Ms. Carter's sister and the parties. Ms. Carter testified that her understanding of the lease purchase agreement was that the purchase price for the property was $54,000 and that Mr. Butler was financing the property. She stated that the $10,000 she paid down was a fee for Mr. Butler owner-financing the property. She further testified that once all payments in accordance with the agreement were made, she and Mr. Butler were to schedule a closing date, so that the property could be deeded in her name. Ms. Carter also testified that a second document to the lease agreement was never discussed. She stated that she was not aware of the second document until her counsel showed it to her, after he received it in response to his discovery requests. She testified that, when she exchanged text messages with Mr. Butler, he never mentioned that she had other terms to fulfill before she could purchase the property.

Mr. Butler testified that he drafted the lease purchase agreement. He indicated that he no longer had a real estate license, but knew how to "write a sales contract." He testified that his understanding of the agreement was that Ms. Carter was leasing the property from him for $1,000 a month for fifty-four months. He testified that, once Ms. Carter had fulfilled the terms of her lease, she had the option to purchase the property for an additional $55,000. He indicated the actual purchase price was $65,000; however, her $10,000 down payment would be applied, leaving a remaining balance of $55,000 for the purchase of the home. He further testified that the terms for the purchase of the property were explained on the second document which he and Ms. Carter discussed "line by line" on the day they executed the lease purchase agreement.

At the close of the evidence, the trial court issued its oral ruling. A written order memorializing the court's ruling was entered on August 1, 2018. The trial court found

---

[4] The detainer warrant was not included in the record; however, the parties do not dispute that it was filed in general sessions court.
[5] The consent order did not consolidate the cases and there is no order of consolidation in the record. However, it appears the trial court ultimately consolidated the two cases. The order entered on July 17, 2018, states, "[u]pon the complaint and answer filed in this matter, the Forcible Entry and Detainer Warrant, the exhibits introduced at trial . . . ."

that: (1) the agreement was a "lease purchase agreement," (2) Ms. Carter had made all payments required under the agreement, (3) Mr. Butler was responsible for all property taxes through the date of the order, (4) Ms. Carter was responsible for obtaining an attorney to close on the property, (5) Mr. Butler will cooperate with closing on the property, (6) the closing would take place within 45 days from entry of the order, and (7) each party was responsible for his or her own attorney's fees.[6]

On August 10, 2018, Mr. Butler filed a motion to reconsider and his first motion to alter or amend judgment. On August 29, 2018, Mr. Butler filed an amended motion to alter or amend judgment. Then on August 30, 2018, Mr. Butler filed a second amended motion to alter or amend judgment. Each of Mr. Butler's motions to alter or amend along with the motion to reconsider provided that the motions were supported by a memorandum "to be filed hereafter." On September 18, 2018, Ms. Carter filed a response to the amended motion along with a memorandum in support thereof. On September 28, 2018, Mr. Butler filed a memorandum in which he argued, among other things, that the trial court correctly found the agreement was a lease purchase but erroneously treated it as a finance agreement. After a hearing, the court denied the motions, finding that: (1) the agreement was a lease purchase agreement, (2) it contained numerous ambiguities, (3) based upon the ambiguous provisions, the contract was construed against the drafting party, (4) Mr. Butler had superior knowledge of real estate law, and (5) Ms. Carter's testimony and version of the facts was "more credible" than Mr. Butler's. Mr. Butler timely filed a notice of appeal.[7]

## II. ISSUE PRESENTED

The sole issue on appeal is whether the trial court erred in treating the lease purchase agreement as a finance agreement. For the following reasons, we vacate the order of the trial court and remand for further proceedings.

## III. DISCUSSION

We begin by noting that our ability to review the issue presented is hindered by the lack of factual findings in the trial court's written order. Generally, in non-jury cases, we review the trial court's findings of fact de novo with a presumption of correctness unless the evidence preponderates to the contrary. Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). We review questions of law de novo, attaching no presumption of correctness to the trial court's legal conclusions. *Armbrister*, 414 S.W.3d at 692 (citing *Kendrick v. Shoemake*, 90 S.W.3d 566, 569 (Tenn. 2002)). Furthermore, Tennessee Rule of Civil Procedure 52.01 provides that a trial court "shall

---

[6] The transcript from the proceedings also indicated that the court found that Ms. Carter did not "owe any rent from the date of the end of this agreement." This was not included in the written order.

[7] On appeal, both parties acknowledge that there are ambiguities in the agreement.

find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment."

The court's order of judgment entered on August 1, 2018, states:

This cause came to be heard on the 17th day of July, 2018, before this Court sitting without a jury. Upon the complaint and answer filed in this matter, the Forcible Entry and Detainer Warrant, the exhibits introduced at trial, the evidence introduced in open court under oath, the statements of counsel, and from the entire record in this cause, it appears to the Court that Judgment should be entered in favor of Plaintiff.

This Court finds that the agreement at issue is a Lease Purchase Agreement for 3200 Cherrywood Cove in Memphis; that there is no dispute that Plaintiff made all the payments; that Defendant is responsible for all property taxes through the date of this Order; that Plaintiff is responsible for obtaining an attorney to close on the property; that Defendant will cooperate with closing on the property or face contempt; that the closing will take place within 45 days from the entry of this Order; and that each party shall bear their own attorney fees.

It is, therefore, ORDERED, ADJUDGED AND DECREED that:

1. Defendant is responsible for all property taxes for 3200 Cherrywood Cove in Memphis through the date of this Order.

2. Plaintiff is responsible for obtaining an attorney to close on the property.

3. Closing on the property shall take place within 45 days from the date of this Order, and Defendant shall cooperate or face contempt.

4. Each party bears their own attorney fees.

5. Costs to be taxed to Defendant.

Additionally the order on the motion to reconsider and motions to alter and amend, in its entirety, provides:

THIS CAUSE came to be heard on October 5, 2018, at 9:00AM upon Defendant's Motion to Alter or Amend Judgment, or in the Alternative, to Reconsider. Plaintiff's Counsel, Scottie Wilkes, and Defense Counsel, Richard Rikard, presented oral arguments at the October 5, 2018 Hearing after which the Court took this matter under advisement.

Based upon the testimony of Plaintiff, Yolanda Carter, and Defendant, Maurice Butler, and the arguments of Plaintiff's Counsel, Scottie Wilkes, and Defense Counsel, Richard Rikard, in open court on July 17, 2018, the briefs submitted by the parties, and the entire record in this cause, Defendant's Motion to Alter or Amend Judgment, or in the Alternative, to Reconsider is hereby DENIED.

THE COURT FINDS:

1. After the Court's Order of Judgment in favor of the Plaintiff was entered on August 1, 2018, Defendant timely filed his Motion to Alter or Amend Judgment pursuant to Rule 59.04 of the Tenn. R. Civ. P.

2. Pursuant to Rule 15.01 of the Tenn. R. Civ. P., leave to amend shall be freely given by the court when justice so requires.

3. The main issue in this matter is whether Plaintiff fulfilled the purchase term of the parties' lease purchase agreement when she made 54 payments of $1,000 per month between April 23, 2010-October 23, 2017, and payed a $10,000 "security deposit" at the beginning of the lease term.

4. Under Tennessee law, "an ambiguous provision in a contract generally will be construed against the party drafting it." Allstate Ins. Co. v. Watson, 195 S.W.3d 609, 612 (Tenn. 2006). Here, the written agreement between the parties was prepared by the Defendant. Furthermore, it is absolutely clear to the Court that there are numerous ambiguities in said agreement which go to the underlying understanding between the parties. That being said, this Court took proper action under Tennessee law and construed the contract against Defendant who, during trial, happened to assert a superior knowledge of real estate law which Plaintiff did not possess.

5. Additionally, the Court finds Plaintiff's testimony and version of the facts to be more credible than Defendant's presentation of the case.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED THAT:

1. Defendant's Motion to Alter or Amend Judgment, or in the Alternative, to Reconsider is hereby DENIED.

2. The Court affirms that the written agreement was intended by the parties to be a lease to purchase agreement and that Plaintiff properly fulfilled all the payments under said agreement.

3. The costs shall be assessed against the Defendant.

IT IS SO ORDERED.

Here, the trial court found the agreement in dispute to be ambiguous, and acknowledged that there were "numerous ambiguities . . . which go to the underlying understanding between the parties." When a contract contains ambiguities, the court must apply the rules of contract construction "to ascertain the intention of the parties." *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.,* 78 S.W.3d 885, 889 (Tenn. 2002). Here, however, we do not know the facts the trial court relied on to determine the parties' intent. The court ultimately declared the agreement to be a "lease purchase agreement," but failed to state the facts it relied on in determining the parties' intent or in reaching its conclusion. Additionally, the court made no findings as to the purported second document. Both of the trial court's orders are largely comprised of its conclusions and specific directives to facilitate the transfer of the property to Ms. Carter.

It is apparent from the testimony of the parties that their respective understanding of the lease agreement is vastly different. To determine that understanding and the resulting intent, the trial court was presented with critical testimony. As such, the trial court was in a better position to observe the witnesses and assess their credibility. *See ARC LifeMed, Inc. v. AMC-Tennessee, Inc.,* 183 S.W.3d 1, 24 (Tenn. Ct. App. 2005) (quoting *Mitchell v. Archibald,* 971 S.W.2d 25, 29 (Tenn. Ct. App. 1998)). ("'One of the most time-honored principles of appellate review is that trial courts are best situated to determine the credibility of the witnesses and to resolve factual disputes hinging on credibility determinations.'"). After hearing that testimony and assessing credibility, it is imperative that the court's order contain sufficient findings for this Court to employ the applicable standard of review and properly analyze the issue presented. The court stated that it found "Plaintiff's testimony and version of the facts to be more credible than Defendant's presentation of the case," but it fell short of making the required findings based upon the substance of the testimony elicited.

Consequently, because the trial court's order contains insufficient findings, we do not reach the merits of this appeal. Ultimately, without specific findings of facts, we are unable to understand the court's rationale underlying its decision. As we have explained:

While there is no bright-line test by which to assess the sufficiency of the trial court's factual findings, the general rule is that "the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue." *In re Estate of Oakley,* [No. M2014-00341-COA-R3-CV,] 2015 WL 572747, at *11 [(Tenn. Ct. App. Feb. 10, 2015)] (quoting *Lovlace* [*v. Copley*], 418 S.W.3d [1,] 35 [(Tenn. 2013)]). Thus, "[s]imply stating the trial court's decision, without more, does not fulfill [the Rule 52.01] mandate." *Barnes v. Barnes,* No. M2011-01824-COA-R3-CV, 2012 WL 5266382, at *8 (Tenn. Ct. App. Oct. 24, 2012). Conversely, when the trial court does not make specific findings of fact, no presumption of correctness arises because "there was nothing found as a fact which we may presume correct." *Brooks v. Brooks,* 992 S.W.2d 403, 405 (Tenn. 1999).

*Gooding v. Gooding*, 477 S.W.3d 774, 782 (Tenn. Ct. App. 2015).

An appropriate remedy, when a trial court fails to make findings of fact, is to vacate the decision and remand the case to the trial court with instructions to issue sufficient findings of fact and conclusions of law. *See, e.g., Williams v. Williams*, No. W2017-02023-COA-R3-CV, 2018 WL 3532077, at *3 (Tenn. Ct. App. July 23, 2018) (vacated and remanded the judgment of the trial court for findings in compliance with Rule 52.01); *In re Caleb F*., M2016-01584-COA-R3-JV, 2017 WL 5712992, at *6-7 (Tenn. Ct. App. Nov. 28, 2017) (same); *Whitfield v. Schroeder*, No. M2016-00791-COA-R3-CV, 2017 WL 2192071, at *7 (Tenn. Ct. App. May 17, 2017) (same). We have determined that the order in this case lacks adequate factual findings that would allow us to conduct a meaningful appellate review. We emphasize that the order must contain enough findings so that we are not "left to wonder on what basis the court reached its ultimate decision." *In re K.H.,* No. 2008-01144-COA-R3-PT, 2009 WL 1362314, at *8 (Tenn. Ct. App. May 15, 2009) (quoting *In re M.E.W.*, No. M2003-01739-COA-R3-PT, 2004 WL 865840, at *19 (Tenn. Ct. App. April 21, 2004)). A court "speaks through its order" not a transcript of the proceedings or other documents. *See Steppach v. Thomas*, 346 S.W.3d 488, 522 (Tenn. Ct. App. 2011) (citation omitted).

## IV. CONCLUSION

For the foregoing reasons, we vacate the order of the trial court and remand the case for the trial court to make additional findings of fact in compliance with Tennessee Rule of Civil Procedure 52.01. Costs of the appeal are taxed equally to appellant, Maurice Butler, and to appellee, Yolanda Carter, for which execution may issue if necessary.

_____
CARMA DENNIS McGEE, JUDGE