IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 5, 2022 Session

## LAUREL MARTIN GRIFFIN v. KEVIN MICHAEL GRIFFIN

**Appeal from the Chancery Court for Williamson County**
**No. 17-CV-45837    James G. Martin, III, Judge**

————————————————————

### No. M2021-00173-COA-R3-CV

————————————————————

In a previous appeal from a divorce, this Court vacated the trial court's award of alimony to the wife. We remanded for reconsideration of the amount of alimony after determining the husband's ability to pay. On remand, the parties stipulated that the husband's gross income was less than the amount the trial court originally relied upon in setting alimony. But the court made no change in its alimony award. The husband appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Cathy Speers Johnson and Sarah Richter Perky, Nashville, Tennessee, for the appellant, Kevin Michael Griffin.

Larry Hayes, Jr. and Rachel M. Thomas, Nashville, Tennessee, for the appellee, Laurel Martin Griffin.

## OPINION

### I.

This is the second appeal arising from the divorce of Laurel Martin Griffin and Kevin Michael Griffin. *See Griffin v. Griffin*, No. M2019-01113-COA-R3-CV, 2020 WL 4873251, at *3 (Tenn. Ct. App. Aug. 19, 2020). In the first appeal by Mr. Griffin, we affirmed the trial court in all respects but two. *Id.* at *13. We upheld the court's decision to award child support and alimony *in futuro*, but we determined that it did not make "sufficient findings of fact regarding [Mr. Griffin's] ability to pay." *Id.* So we vacated

both awards. *Id.* In remanding, we instructed the trial court "to make findings of fact regarding the reasonableness of [Mr. Griffin's] expenses, ascertain the amount of alimony he is able to pay, and enter a judgment setting an appropriate amount of alimony *in futuro*." *Id.*

On remand, the parties stipulated to the new child support amount, leaving only the amount of alimony to be decided. The trial court determined, despite Ms. Griffin's arguments to the contrary, that the mandate after the first appeal did not permit it to reopen proof. So it began consideration of Mr. Griffin's ability to pay alimony with the parties' stipulation that Mr. Griffin's gross monthly income was $20,725. The parties also agreed that, after deducting federal taxes and withholdings, Mr. Griffin's net monthly income was $16,786.25.

The court then considered the reasonableness of Mr. Griffin's expenses beyond taxes and withholdings. The court determined that Mr. Griffin should not include expenses related to the parties' adult son. So the court reduced the claimed expenses for medical insurance and car insurance to the extent premiums included coverage for the adult son. The court also eliminated a car loan payment associated with the adult son's car. It acknowledged that Mr. Griffin was liable for the debt on the son's car as a result of the division of marital debt. But the court noted that Mr. Griffin had "sufficient liquid assets to pay the debt in full and eliminate the monthly expense[]."

As for the remainder of the expenses shown on the income and expense statement submitted at trial, the court found that Mr. Griffin did not prepare the document himself and had little independent knowledge of its contents. As a result, the court had "no confidence in the accuracy" of the amounts found within the "other expenses" category of the document. It was "evident . . . that [Mr. Griffin] ha[d] simply fabricated numbers for the [c]ourt's consideration and misrepresented their origin." Based on these findings, the court discounted Mr. Griffin's monthly expenses for food, clothing, medical and dental expenses, laundry and dry cleaning, toiletries, travel, charity, recreational activities, and gifts for himself and his children. It found that these expenses were exaggerated or discretionary and thus not reasonable. But the court did not find a specific amount of "other" monthly expenses that it would consider reasonable.

The court then analyzed monthly housing and utility expenses. Mr. Griffin decided to remain in the marital home after the divorce despite its associated costs. He argued that staying in the marital home was a good financial decision because it contained a recording studio where he could work. So, according to him, staying was less expensive than buying a smaller house and renting studio time. The court stated that "it [was] in no position to dictate the manner in which either party spen[t] their disposable income," but again suggested that Mr. Griffin could decrease his monthly payments by using the substantial sum of liquid assets he received in the divorce. The court concluded, "if [Mr. Griffin]

wants to continue to maintain the liquid assets awarded to him and continue [to] occupy [a] residence with an attendant monthly cost of $7,383.72, that is his prerogative."

The trial court concluded its order by finding that Mr. Griffin had "no credibility regarding the accuracy of his monthly expenses []; that his monthly expenses [were] not reasonable; that the figures presented by him are not reliable; and that Mr. Griffin ha[d] the ability to pay Ms. Griffin alimony *in futuro* of $6,000 per month." This was the same amount that the court had previously awarded. *Id.* at *3.

## II.

Mr. Griffin again appeals. He argues the trial court erred in calculating his monthly expenses and, as a result, erred in ordering him to pay $6,000 per month in alimony. He also argues that the trial court treated the parties inconsistently when analyzing their expenses and should have revisited Ms. Griffin's monthly expenses on remand. Both parties also seek attorney's fees.

### A.

"[T]rial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). In exercising that discretion, the court must consider a non-exclusive list of statutory factors found in Tennessee Code Annotated § 36-5-121(i). *Id.* at 109-10. The two most important factors are the disadvantaged spouse's need and the obligor spouse's ability to pay. *Id.* at 110. We apply an abuse of discretion standard in reviewing an alimony award. *Id.* at 105. "An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Id.*; *Wright ex rel. Wright v. Wright*, 337 S.W.3d, 166, 176 (Tenn. 2011).

In the first appeal, we reviewed the trial court's analysis of the statutory factors. *Griffin*, 2020 WL 4873251, at *11-12. As part of that review, we considered Ms. Griffin's need for alimony. And we determined that the evidence did not preponderate against the court's finding of need based on its assessment of her reasonable expenses. *Id.* at *12. Our remand focused on the other important factor, Mr. Griffin's ability to pay. As noted above, we directed the trial court "to make findings of fact regarding the reasonableness of [Mr. Griffin's] expenses, ascertain the amount of alimony he is able to pay, and enter a judgment setting an appropriate amount of alimony *in futuro*." *Id.* at *13. The court was not at liberty to venture outside the order of remand. *See State v. Irick*, 906 S.W.2d 440, 443 (Tenn. 1995). So we decline Mr. Griffin's invitation to revisit the issue of the reasonableness of Ms. Griffin's expenses in this appeal. The findings regarding Ms. Griffin's expenses that we upheld in the previous appeal are law of the case. *See Cook*

*v. McCullough*, 735 S.W.2d 464, 469-70 (Tenn. Ct. App. 1987). Our focus, then, is on the order of remand: findings of fact regarding the reasonableness of Mr. Griffin's expenses and his ability to pay alimony *in futuro*.

We review the trial court's findings of fact de novo with a presumption of correctness, unless the evidence preponderates otherwise. TENN. R. APP. P. 13(d); *Gonsewski* 350 S.W.3d at 105 n.5. Evidence preponderates against a finding of fact when it "support[s] another finding of fact with greater convincing effect." *Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). In weighing the preponderance of the evidence, determinations of witness credibility are given great weight, and they are not overturned absent clear and convincing evidence to the contrary. *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). We review questions of law de novo, with no presumption of correctness. *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013).

In complying with the mandate on remand, the trial court evaluated Mr. Griffin's claimed expenses. It determined some expenses were unreasonable altogether while it reduced others.

1. Expenses Related to the Parties' Adult Son

The court determined that some of Mr. Griffin's monthly expenses connected to the parties' adult son were not reasonable. It reduced Mr. Griffin's medical insurance premium by twenty-five percent ($1,100 to $825), reduced his car insurance premium by $142.95, and eliminated a $420.82 car payment from his monthly expenses.

Parents are generally not responsible for the expenses of their adult children. *See Blackburn v. Blackburn*, 526 S.W.2d 463, 466 (Tenn. 1975); *Bryan v. Leach*, 85 S.W.3d 136, 151 (Tenn. Ct. App. 2001). Thus, a court may appropriately deduct such expenses when assessing a parent's ability to pay spousal support. *Jenkins v. Jenkins*, No. E2014-02234-COA-R3-CV, 2015 WL 5656451, at *7 (Tenn. Ct. App. Sept. 25, 2015).

Mr. Griffin argues that the trial court erred in reducing the car-related expenses, because, in dividing marital debt, the court allocated the debt associated with his son's car to Mr. Griffin. And Mr. Griffin takes issue with the court's suggestion that he could pay off the car expenses from his liquid assets. He argues that "whether an expense can be satisfied from assets awarded in a divorce does not determine the reasonableness of an expense." But whether an expense is reasonable depends on the circumstances. *See Moscheo v. Moscheo*, 838 S.W.2d 226, 227-28 (Tenn. Ct. App. 1992). And courts may anticipate marital debt will be satisfied by liquid assets awarded in the divorce. *See Watters v. Watters*, 959 S.W.2d 585, 590 (Tenn. Ct. App. 1997); *cf. Alford v. Alford*, 120 S.W.3d 810, 814 (Tenn. 2003) (holding that courts should consider "which party is best able to repay the debt" when allocating marital debts).

4

In our view, the court appropriately excluded expenses associated with the adult son's car. Although Mr. Griffin was obligated on the car loan, his son could be expected to make the payments if he desired to keep the car. Should keeping the car not be sufficient incentive for the son to make the payments, then Mr. Griffin could sell the car in order to reduce his personal liability on the loan.

Mr. Griffin also argues that the court's reduction of his medical insurance premium was arbitrary because "health insurance policies generally establish a flat rate for the inclusion of dependents regardless of the number of dependents listed." The only evidence in the record pertaining to health insurance is that Mr. Griffin's premium decreased from $1,900 per month to $1,100 per month when he removed Ms. Griffin from the plan. Ms. Griffin responds that the court could use its "common sense" to make the twenty-five percent reduction. We agree with Mr. Griffin on this point.

2. "Other Expenses"

The trial court thoroughly reviewed the income and expense statement that Mr. Griffin provided. Under a category called "Other Expenses," he included such items as food, clothing, medical, dental, laundry, cleaning, and toiletries. Having heard Mr. Griffin previously testify as to his monthly expenses, the court expressed "no confidence in the accuracy of Mr. Griffin's statement of 'other expenses,'" and found it was "evident . . . that he ha[d] simply fabricated numbers for the [c]ourt's consideration and misrepresented their origin." Its assessment of his credibility led the court to determine that the "other expenses" were exaggerated.

Mr. Griffin did not prepare the statement of monthly expenses himself, had little independent knowledge of its contents, and could not vouch for its accuracy. He was not able to explain the method used for the document's preparation other than to state it was put together by a third party. Upon review, we cannot find evidence in the record to validate the expense figures beyond Mr. Griffin's own testimony.[1] And we will not second guess the trial court's determination of Mr. Griffin's credibility. *See Mitchell v. Archibald*, 971 S.W.2d 25, 29 (Tenn. Ct. App. 1998) ("[A]ppellate courts routinely decline to second-guess a trial court's credibility determinations unless there is concrete, clear, and convincing evidence to the contrary.").

---

[1] The trial court also determined that Mr. Griffin's statement of monthly expenses fell "woefully short" of the standard required by Tennessee Rule of Evidence 1006 for summaries of evidence. But we need not address whether the statement of expenses satisfied Rule 1006 due to the court's adverse credibility determination.

5

Beyond the adverse credibility determination, the court also found that some of the monthly expenses in the "other expenses" category were discretionary. So the court reduced expenses for gifts, travel and vacation, and charitable donations.

Mr. Griffin contends "that the standard in reviewing the parties' expenses for the purposes of determining alimony is whether the stated expenses are unreasonable or exaggerated, not whether an expense is 'discretionary' in nature." But the question of whether an expense is "discretionary" informs the question of whether it is "reasonable." *See Fabrizio v. Fabrizio*, No. E2014-02067-COA-R3-CV, 2015 WL 6550756, at *5 (Tenn. Ct. App. Oct. 29, 2015) (upholding trial court's determination that a husband's discretionary expenses were not reasonable or necessary). An expense can be unreasonable because it is not necessary. *See Cain-Swope v. Swope*, No. M2018-02212-COA-R3-CV, 2020 WL 865396, at *12 (Tenn. Ct. App. Feb. 21, 2020) (concluding that voluntary house-cleaning expense could be excluded from calculation of reasonable expenses). And discretionary expenses are by their very nature unnecessary.

3. Ability to Pay

Based on the parties' stipulation, the trial court found that Mr. Griffin's monthly net income after taxes and government withholdings was $16,786.25. He claimed his monthly expenses totaled $16,671.70. But the court found some expenses exaggerated, unsupported, or unreasonable. It reduced his monthly expenses by $563.80 for expenses related to his adult son's car and found that another $3,844 in "other" and "discretionary" expenses lacked evidentiary support. And the court suggested that his $7,383.72 in monthly housing expenses was excessive. The evidence does not preponderate against these findings. While the court did err in reducing his monthly health insurance premium by $275, the error did not undercut the court's finding that Mr. Griffin had sufficient funds to pay the amount of alimony awarded. *See* TENN. R. APP. P. 36(a) (explaining that to warrant reversal, an error must have "more probably than not affected the judgment"); *see also Watters*, 959 S.W.2d at 589. In awarding the amount of alimony *in futuro* that it did, the court implied that his reasonable expenses would not exceed $10,786.25 each month. So we find no abuse of discretion in the decision to award alimony *in futuro* in the amount of $6,000 per month.

B.

Both parties request attorney's fees incurred on appeal. Tennessee follows the well-established rule that parties are responsible for their own attorney's fees absent a statute or agreement between the parties providing otherwise. *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000). Under the version of Tennessee Code Annotated

§ 36-5-103(c) applicable when this divorce was filed,[2] a plaintiff spouse or the spouse named primary residential parent "may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony." Tenn. Code Ann. § 36-5-103(c) (2017). Thus, Ms. Griffin could seek an award of fees as she was both a plaintiff spouse and the primary residential parent. In considering a request for attorney's fees on appeal, we consider the requesting party's ability to pay such fees, the requesting party's success on appeal, whether the appeal was taken in good faith, and any other equitable factors relevant in a given case. *Darvarmanesh v. Gharacholou*, No. M2004-00262-COA-R3-CV, 2005 WL 1684050, at *16 (Tenn. Ct. App. July 19, 2005). Although Ms. Griffin was successful on appeal, when we consider all of the relevant factors in this case, we respectfully decline to grant her request for an award of her attorney's fees.

## III.

Although the court did err in reducing the health insurance premium expense, the evidence does not preponderate against its other findings regarding Mr. Griffin's reasonable expenses and ability to pay alimony. So we affirm the award of alimony *in futuro*.

s/ W. Neal McBrayer
W. NEAL MCBRAYER, JUDGE

---

[2] Effective July 1, 2018, the General Assembly revised the circumstances under which attorney's fees could be awarded in domestic relations cases. 2018 Tenn. Pub. Acts 1186.