IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 7, 2023 Session

## DIANA LYNN VAN ZANDBERGEN v. SCOTT W. VAN ZANDBERGEN

**Appeal from the Chancery Court for Coffee County**
**No. 2020CV-198     Vanessa Jackson, Judge**

_____

### No. M2022-00886-COA-R3-CV

_____

In this divorce case, Husband/Appellant appeals the amount and duration of alimony *in futuro* awarded to Wife/Appellee.  Husband also appeals the trial court's award of attorney's fees to Wife for Husband's alleged failure to comply with discovery.  We conclude that the amount of alimony *in futuro* exceeds Wife's need. As such, the award of alimony *in futuro* is modified to $3,451.00 per month and shall terminate upon Wife's death or remarriage, or Husband's death in accordance with Tennessee Code Annotated section 36-5-121(f)(3).  We vacate the trial court's award of $20,000.00 in attorney's fees to Wife and remand for the trial court to enter an order containing sufficient findings of fact and conclusions of law regarding this issue pursuant to Tennessee Rule of Civil Procedure 52.01.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Reversed in Part, Affirmed in Part as Modified, and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which ANDY D. BENNETT and JEFFREY USMAN, JJ., joined.

Brad William Hornsby, Murfreesboro, Tennessee, and Eric J. Burch, Manchester, Tennessee, for the appellant, Scott W. Van Zandbergen.

C. Diane Crosier and Hannah R. Ellis, Franklin, Tennessee, for the appellee, Diana Lynn Van Zandbergen.

### MEMORANDUM OPINION[1]

_____

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall

# I. Background

Appellant Scott W. Van Zandbergen ("Husband") and Appellee Diana Lynn Van Zandbergen ("Wife") were married in 1983. Shortly thereafter, Husband entered the Marine Corps and served 22 years. Husband retired as a major and took a job with the University of Tennessee Space Institute ("UTSI") in 2006. Husband's gross monthly income from UTSI is $8,078.00 per month. Husband also receives $117.00 per month in longevity pay as well as $125.00 per month for a mobile phone allowance. In addition, Husband receives $4,001.00 per month from his military pension, of which $522.00 per month is tax-free disability retirement. Wife will receive $1,739.00 per month from Husband's military pension. Husband also receives rental income of $11,400.00 per year from a farm he inherited. Wife is unemployed and has not worked since 2014. Wife receives $1,073.00 per month in social security disability.

Husband admitted to having affairs during the marriage. At the time of the divorce hearing, Husband was 59 years old and intended to retire in about 8 years. Wife was 58. There is no evidence that Husband has any infirmities that prevent him from working. On the other hand, Wife claims numerous maladies, including thyroid cancer, hysterectomy, joint issues, fibromyalgia, migraines, anxiety, depression, PTSD, and IBS. Husband claims that there was no evidence to support these infirmities, and, indeed, other than Wife's testimony, there is no evidence concerning her medical conditions. Husband claims that Wife is supported by her parents and that some of the expenses she claims are paid by them, without any expectation of repayment. Husband asserts that, although Wife initially claimed monthly expenses of $5,137.00 "[a]t the trial, the claims of the needs of the Wife went through the roof and she claimed a monthly need of well over $7,000.00."

On July 21, 2020, Wife filed a complaint for divorce on grounds of inappropriate marital conduct, adultery, and irreconcilable differences. Wife requested all four types of alimony. On August 13, 2020, Husband filed an answer and counter-complaint for divorce. Therein, he averred that Wife should not receive any alimony. On September 14, 2020, Wife filed a motion for *pendente lite* support claiming a monthly need of $5,137.00.

On October 26, 2020, the trial court heard Wife's request for temporary support and entered an order on October 27, 2020, awarding Wife $2,500.00 per month in *pendente lite* support. We note that, at the time of the award of temporary support, Wife's sole income was from her Social Security disability. The trial court also ordered Husband to continue to pay Wife's automobile insurance, life insurance, and cell phone bill. On January 11, 2022, Husband filed a statement of his monthly income and expenses, wherein he alleged monthly income of $10,790.67 and $9,268.46 in monthly expenses.

Concerning discovery, the record contains a January 13, 2021 "Agreed Order,"

be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

stating that the parties "agreed that the Motion to Compel Discovery and Motion for Order is hereby set for January 19, 2021." In a January 22, 2021 order, the trial court granted Wife's motion to compel discovery, finding that Husband "failed to respond fully to written discovery propounded to him on September 14, 2020." The trial court ordered Husband to pay $1,505.00 in Wife's attorney's fees for his failure to comply with discovery. On January 2, 2022, Wife filed a motion to continue the final hearing in the divorce. Therein, Wife averred that she "has not received Husband's updated discovery, nor has she received any documents requested during Husband's deposition and in the Subpoena Duces Tecum."

On January 25 and February 8, 2022, the trial court held the final hearing. On March 30, 2022, the trial court entered a written opinion. As is relevant to this appeal, the trial court awarded Wife $4,350.00 per month in alimony *in futuro* with no stated termination date. The trial court also ordered Husband to pay $20,000.00 for Wife's attorney's fees based on the court's finding that Husband "failed to comply with the Court's orders, failed to appropriately and timely file responses to discovery and caused unnecessary hearings." The trial court's opinion does not elaborate further concerning the specifics of Husband's failure to comply with discovery. On June 6, 2022, the trial court entered a final decree, which incorporates the trial court's March 30, 2022 opinion. Husband filed a timely appeal.

## II. Issues

Husband raises three issues for review as stated in his brief:

1. Did the Court err in awarding Wife alimony *in futuro* which was in excess of the amount requested and includes the purchase of illegal drugs and a standard of living well in excess of that exercised during the marriage resulting in Wife receiving a net amount approximately double what husband receives based primarily on the fault assessed to Husband?
2. Did the Court err in not permitting the alimony to terminate at a date in the future considering the age of the parties?
3. Did the Court err in awarding Wife attorney fees for failure to answer discovery when there was absolutely nothing in the record to support the award[—]not the discovery, the motion to compel discovery, or even itemized time sheets setting forth the time expended?

Wife asks for her attorney's fees and expenses on appeal.

## III. Standard of Review

This case was tried without a jury. As such, "[o]ur review is de novo upon the record of the proceedings below with a presumption of correctness as to the trial court's factual

findings unless the evidence preponderates against those findings." ***Barnes v. Barnes***, 193 S.W.3d 495, 498 (Tenn. 2006) (citing Tenn. R. App. P. 13(d)). However, the trial court's conclusions of law "are accorded no such presumption." ***Id***. (citing ***Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993)).

Specifically concerning awards of spousal support, the Tennessee Supreme Court has "repeatedly . . . observ[ed] that trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award." ***Gonsewski v. Gonsewski***, 350 S.W.3d 99, 105 (Tenn. 2011). In ***Gonsweski***, the Court explained:

> [A] trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. ***Kinard v. Kinard***, 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998); *see also* ***Burlew*** [***v. Burlew***], 40 S.W.3d [465,] 470 [(Tenn. 2004)]; ***Robertson v. Robertson***, 76 S.W.3d 337, 340-41 (Tenn. 2002). As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." ***Kinard***, 986 S.W.2d at 234. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." ***Broadbent v. Broadbent***, 211 S.W.3d 216, 220 (Tenn. 2006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. ***Robertson***, 76 S.W.3d at 343. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. ***Wright ex rel. Wright v. Wright***, 337 S.W.3d 166, 176 (Tenn. 2011); ***Henderson v. SAIA, Inc.***, 318 S.W.3d 328, 335 (Tenn. 2010). This standard does not permit an appellate court to substitute its judgment for that of the trial court, but "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" ***Henderson***, 318 S.W.3d at 335 (quoting ***Lee Medical, Inc. v. Beecher***, 312 S.W.3d 515, 524 (Tenn. 2010)). Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision. ***Wright***, 337 S.W.3d at 176; ***Henderson***, 318 S.W.3d at 335.

***Id***. at 105-106 (footnotes omitted).

## IV. Alimony

Husband does not take issue with the type of alimony awarded in this case. Rather, he appeals the amount of alimony awarded to Wife and the fact that the trial court did not state an end date. Tennessee Code Annotated section 36-5-121 states in pertinent part:

(d)(1) The court may award rehabilitative alimony, alimony in futuro, also known as periodic alimony, transitional alimony, or alimony in solido, also known as lump sum alimony or a combination of these, as provided in this subsection (d).

\*\*\*

(4) An award of alimony in futuro may be made . . . where a spouse may be only partially rehabilitated, or instead of an award of rehabilitative alimony, where rehabilitation is not feasible. . . .

\* \* \*

(f)(1) Alimony in futuro, also known as periodic alimony, is a payment of support and maintenance on a long term basis or until death or remarriage of the recipient. Such alimony may be awarded when the court finds that there is relative economic disadvantage and that rehabilitation is not feasible . . . . (2)(A) An award of alimony in futuro shall remain in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances.

\* \* \*

(i) In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:
(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121. As the Tennessee Supreme Court has explained, "[a]lthough each of these factors must be considered when relevant to the parties' circumstances, 'the two that are considered the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay.'" ***Gonsewski***, 350 S.W.3d at 110 (quoting ***Riggs v. Riggs***, 250 S.W.3d 453, 457 (Tenn. Ct. App. 2007)). Furthermore, this Court has confirmed that when "considering these two factors, the primary consideration is the disadvantaged spouse's need." ***Murdock v. Murdock***, No. W2019-00979-COA-R3-CV, 2022 WL 611024, at *14 (Tenn. Ct. App. Mar. 2, 2022).

As noted above, in seeking *pendente lite* support, Wife claimed monthly need of $5,137.00. Following a hearing, the trial court awarded Wife $2,500.00 per month in temporary support. Then, following the final divorce hearing, the trial court awarded Wife $4,350.00 per month in alimony *in futuro* with no specified termination date. On appeal, Husband asserts that Wife's expenses did not increase from the time of the award of *pendente lite* support so as to warrant an increase in alimony.

### A. Amount of Alimony

Concerning the award of alimony *in futuro*, in the June 6, 2022 Final Decree of Divorce, the trial court stated that

[b]ased on the parties' estimates of their income and expenses and [in] consideration of Tenn. Code Ann. §36-5-121(i), as well as other applicable

law, the Court finds that Wife needs the sum of $4,350.00 per month in alimony *in futuro*, and Husband has the ability to pay . . . .

In a separate March 30, 2022 "Opinion," which was incorporated by reference into the Final Decree of Divorce, the trial court made the following additional findings to support its award of alimony *in futuro*:

> Tenn. Code Ann. § 36-1-121(i) sets forth the factors to be considered to determine whether an award of alimony is appropriate. In considering those, the Court finds as follows:
>
> Husband is fifty-nine years old. He is healthy, able-bodied and gainfully employed in a well-paying job. Wife is unemployed and disabled. She has an associates' degree, but has not worked since 2014. Wife, who is fifty-eight years old, suffers from mental and medical conditions, including but not limited to PTSD and fibromyalgia. Given her mental and medical conditions and her age, it is unlikely she can obtain further education or training that would allow her to be gainfully employed.
>
> As to the factors set forth in Tenn. Code Ann. § 36-5-121(i)(8) and (9), the Court has previously made findings as to the separate assets of the parties and the division of marital property and has found that the parties each made tangible and intangible contributions to the marriage.
>
> As to factor (11), the Husband is clearly at fault in the demise of the marriage. He has admitted to purchasing and watching pornography and having extramarital affairs.
>
> Husband receives gross monthly income of $8,078.00 per month from his current employment. He receives $4,001.00 per month from his military pension, $117.00 per month in longevity pay and $125.00 per month for a mobile phone allowance. He also receives rental income from his separate property in Illinois in the amount of $750.00 per month.
>
> Wife receives $1,073.00 per month in gross social security disability. Wife will receive $1,739.00 from Husband's military pension.
>
> Based upon the parties' estimates of their income and expenses, the Court finds Wife needs the sum of $4,350.00 per month in alimony *in futuro*, and Husband has the ability to pay said alimony.

As set out above, in setting alimony, the trial court referred to its division of marital property and debts, *i.e.*, "As to the factors set forth in Tenn. Code Ann. § 36-5-121(i)(8) and (9), the Court has previously made findings as to the separate assets of the parties and the division of marital property." From our review, the trial court wholly adopted Wife's proposed division of marital property, which was admitted into evidence as trial exhibit 24. According to the exhibit, the parties each received 50% of the marital estate, *i.e.*, $303,424.00. In addition to her award of marital property, Wife testified that she has a Merrill Lynch account that is funded by "gifts" from her parents. At the time of the divorce

hearing, the funds in that account totaled approximately $48,000.00. It does not appear that the trial court considered Wife's Merrill Lynch account in calculating her need. However, because the account is largely funded by "gifts" from her parents, it is not guaranteed that the account will increase in value.

Concerning the parties' respective incomes and expenses, at trial, Wife called Rosemary Frank as her financial expert. Ms. Frank prepared a report concerning the parties' assets and liabilities, which report was entered into evidence as trial exhibit 27. According to this exhibit, Husband's monthly income from all sources is $10,028.00. Notwithstanding alimony, Wife's monthly income is approximately $2,812.00. We now turn to Wife's monthly expenses.

At trial, Wife claimed monthly expenses totaling $7,117.00. As set out in Wife's detailed expense report, which was admitted into evidence as trial exhibit 18, these monthly expenses were comprised of the following:

| Detailed Expenses | | | | |
|---|---|---|---|---|
| **Wife's Expenses** | | **Post-Divorce** | | |
| | | **Weekly** | **Monthly** | **Annual** |
| | | | | |
| **Household** | | | | |
| Rent | | | 850 | |
| HOA / Condo Fee | | | 100 | |
| Homeowners' Insurance | | | 150 | |
| Real Estate Tax | | | 240 | |
| Cable / Internet | | | 140 | |
| Internet Access | | | 50 | |
| Netflix, CBS, Prime | | | 25 | |
| Household Maintenance | | | 100 | |
| Household Supplies | | | 50 | |
| Lawn Service | | | 30 | |
| Utilities - Electricity | | | 130 | |
| Utilities - Gas / Propane Heat | | | - | |
| Utilities - Water / Sewer | | | 21 | |
| Major Purchase Fund (furniture, etc.) | | | 167 | 2,000 |
| Other Household - Storage Unit | | | | |
| Moving Costs one time | | | | |
| **LIVING EXPENSES-HOUSEHOLD** | | | **$ 2,053.00** | |
| | | | | |
| | | | | |
| **Transportation** | | | | |
| Car Payments | | | 525 | |
| Car Insurance | | | 125 | |
| Car Gasoline / Oil | | | 175 | |
| Car Maintenance and Repair | | | 50 | |
| Car License / Stickers | | | 4 | |
| Tolls | | | 10 | |
| **LIVING EXPENSES-TRANSPORTATION** | | | **$ 889.00** | |
| | | | | |
| | | | | |
| **Personal** | | | | |
| Cell Phone | | | 110 | |
| Cigarettes | | | 150 | |
| Clothes | | | 200 | |
| Charitable | | | 150 | |
| Church / Synagogue | | | 150 | |
| Entertainment | | | 100 | |
| Food / Groceries (not restaurants) | | | 400 | |
| Gifts | | | 125 | |
| Hair | | | 60 | |
| Laundry | | | 20 | |
| Legal and Accounting | | | 21 | 250 |

| Detailed Expenses | | | | |
|---|---|---|---|---|
| **Wife's Expenses** | | **Post-Divorce** | | |
| | **Weekly** | **Monthly** | **Annual** | |
| Liquor / Beer / Wine | | 200 | | |
| Manicure / Pedicure | | 70 | | |
| Pets | | 60 | | |
| Restaurants | | 200 | | |
| Sports / Hobbies/Lessons | | 75 | | |
| Subscriptions / Books | | 42 | | |
| Therapist / Counselor | 75 | 325 | | |
| Toiletries / Grooming | | 40 | | |
| Travel (Visit Children) | | 333 | 4,000 | |
| Vacations | | 150 | | |
| Technology | | 25 | | |
| Massage | | 80 | | |
| **LIVING EXPENSES-PERSONAL** | | **$3,086.00** | | |
| | | | | |
| **Health and Medical** | | | | |
| Health Insurance | | 240 | | |
| Dental/Vision Insurance | | - | | |
| Medical / Doctor | | 75 | | |
| Dental | | 180 | | |
| Drug & Prescription | | 319 | | |
| Optical | | 200 | | |
| Laboratory | | 25 | | |
| **LIVING EXPENSES-HEALTH & MEDICAL** | | **$1,039.00** | | |
| | | | | |
| **Other** | | | | |
| Life Insurance | | 50 | | |
| **LIVING EXPENSES-OTHER** | | **$    50.00** | | |
| | | | | |
| **TOTAL LIVING EXPENSES** | | **$7,117.00** | | |

First, as noted by Appellant in his brief, the difference between Wife's stated need (*i.e.*, $7,117.00) and her income without alimony (*i.e.*, $2,812.00) is $4,305.00 per month. However, the trial court held that Wife needs $4,350.00 per month in alimony, which is $45.00 more than Wife's stated need in trial exhibit 18, *supra*. Accordingly, the amount of alimony should be reduced by $45.00 to correct this miscalculation.

Next, as to her claim for "Rent" in the amount of $850.00 per month, at the time of trial, Wife testified that she was living in a home owned by her parents, and she paid no rent, to-wit:

Q. You have rent listed as $850 per month. How did you reach this number?
A. My parents purchased the home that I'm living in right now, and because I don't have sufficient income to make a payment, they've postponed any repayment that I need to make until after the divorce. At that point, we're going to sign a contract, and that is the estimated monthly payment to them to purchase the house.
Q. After this divorce ends, will you be responsible for making rent or rent-to-own type payments?
A Yes.

On cross-examination, Wife further explained:

Q. Now, you've got $850 per month as rent; right?
A. Yes.
Q And you're not paying any rent.
A. At this point, I don't have the funds to pay a rent . . . but I've been covering the other expenses for the house.
Q. But your parents bought this house for you to live in.
A. Yes.
Q. And you anticipate you're going to continue to live there.
A. And purchase it from them.
Q. You don't have a purchase agreement?
A. Not in writing. We've verbally discussed it.
Q. Well, what's the purchase price?
A. My dad said he was going to check what market value is at the time that I'm able to purchase the home, and then I'll start making payments towards like a rent-to-own kind of situation.
Q. But if you didn't have the money for that, your parents would allow you to stay there, wouldn't they?
A. Yes.

Likewise, Wife testified that she had a similar arrangement with her parents concerning the vehicle she was driving at the time of the hearing, to-wit:

Q. Do you currently own a car?
A. I do not.
Q. Do you have a car that you have?
A. Yes. I'm borrowing a vehicle from my parents for the last year.
Q. Do you intend to purchase a car? Is that the car payment you have at $525?
A. That's correct. I'll need a vehicle at the end of this.

On cross-examination, Wife further explained:

- 11 -

Q Now, we've got a car payment at $525 per month?
A Correct.
Q. You don't have a car payment.
A. I will after the divorce.
Q. Who's the payment owed to?
A. My parents.
Q. They gave you a car to drive.
A. They loaned me a car to drive.
Q. A 2017 Toyota Camry.
A. Correct.
Q. Do you have any agreement with your parents that you'll buy that car from them?
A. Yes, we've discussed it actually between these two court dates and the house, and we came up with the understanding that I'll be purchasing [the car]. Otherwise, I'd have to go out and get an entirely new car.
Q. Unless they keep letting you use that one.
A. That's not our—they're only helping so that I can have some transportation and a place to live until this is over. They're not going to keep funding my life after this.
Q. What's the purchase price of the car?
A. Nineteen thousand five hundred.

As conceded by Wife, no written agreement concerning the purchase of her parents' home or vehicle was entered into evidence. Furthermore, Wife's parents did not testify as to any arrangement concerning the home or the car. However, the trial court clearly gave credence to Wife's testimony that, following the divorce, she will be paying some amount of mortgage (or rent) and some amount of car payment to her parents. *See **Mitchell v. Archibald***, 971 S.W.2d 25, 29 (Tenn. Ct. App. 1998) ("[A]ppellate courts routinely decline to second-guess a trial court's credibility determinations unless there is concrete, clear, and convincing evidence to the contrary."). Regardless, Wife's parents should not be charged with paying for her basic necessities such as housing and transportation. To live independently, Wife will need money for a vehicle and a house. There are, however, other expenses in trial exhibit 18 that should be reduced.

Under "Personal" expenses, Wife claims $150.00 per month for cigarettes and $200.00 per month for "Liquor/Beer/Wine." Husband argues that these are not necessary expenses. We agree. Although Wife testified that she smoked cigarettes throughout the marriage, she also testified that her intention was to quit. So, not only are cigarettes not a necessity, but by her own testimony, she is going to stop using them. Likewise, alcohol is not a necessity, and Husband should not have to pay for Wife's use of same. Removing these expenses reduces Wife's "Personal" expenses by $350, *i.e.*, from $3,086.00 per month to $2,736.00.

Turning to Wife's claim of $319.00 per month in "Drug & Prescription" expenses, this number appears to be inflated. Wife testified that, as of January 2022, her health insurance included prescription medication coverage. Other than Wife's testimony, there was no evidence concerning what drugs Wife is prescribed or how much those drugs cost. However, Wife's testimony is enlightening on the subject of her out-of-pocket monthly expenses for medication, to-wit:

Q. Since January [*i.e.*, when Wife's prescription drug coverage began], have you purchased any prescription drugs since you've had this coverage?
A. I've picked up two prescriptions.
Q. And how much did those cost?
A. One of them was .50 cents—
Q. (Interposing) Fifty cents.
A. —and other one was $43 for one bottle.
Q. Okay. So in over a month, you've spent $43.50.
A. I currently have a little bit of a stockpile on my daily prescriptions.
Q. Well, that's a far cry from $319 a month, is it not?
A. I understand that, but that is what the dollar figure comes out to be for my prescriptions.
Q. That's just not what you've spent since it's been under this current plan.
A. In January, I believe I spent just maybe $183 out-of-pocket and—
Q. (Interposing) Well, I asked you since the beginning of January since you've been under this prescription plan, how much have you spent. You told me .50 cents on one and $43 on the other.
A. I'm adding one that I forgot.
Q. Well, what was that? What is the medication?
A. It's marijuana.
Q. So you expect your husband to purchase marijuana for you as well after the divorce?
A. It's a prescription that I've been given for my multiple conditions.
Q. And that's not covered under Insurance?

\*\*\*

Q How long have you been smoking marijuana?
A. I think since 2010-ish.
Q. So is that a big part of this drug and prescription cost?
A. Yes. Well, it's a portion of it; maybe half.

The Tennessee General Assembly has not legalized marijuana for either medical or recreational use in Tennessee, where the divorce proceedings are set. Because marijuana use is illegal in Tennessee, we conclude that it was error for the trial court to charge Husband with these expenses, *i.e.*, approximately $160.00 per month. Furthermore, it

- 13 -

appears that Wife's expenses for her legal prescription drugs are largely covered by her current insurance plan. By her own testimony, she has paid only $43.50 per month since her insurance became effective. In the absence of any evidence to support expenses above the $43.50 she testified to, and in the absence of any documentation concerning Wife's prescriptions or the costs thereof, her "Drug & Prescription" expense should be reduced by a total of $269.00, *i.e.*, from $319.00 to $50.00 per month.

Wife claimed expenses for "Cable/Internet" of $140.00 per month. In a separate line item, she claimed a monthly expense of $50.00 for "Internet". Then, in another line item, she claimed expenses of $25.00 per month for "Netflix, CBS, Prime." When questioned as to whether some of these expenses were duplicated, Wife testified, in relevant part, as follows:

> Q. Well, we've got $215 between cable/internet and some of these apps, entertainment apps. Do you have to pay for internet access and internet?
> A. I pay for internet access, and then I pay for TV service. They don't come from the same company.
> Q. Why do you need cable/internet, internet access, and all these channels . . . . Why do you need—you've got cable/internet at $140 per month. You've got internet access at $50 a month. Wouldn't those be redundant?
> A. I don't recall that. I know I pay $50 a month for the internet to be brought to the house.
> Q Okay. Who do you pay that to?
> A That goes to Xfinity.
> Q Okay. So, Xfinity is $50 a month.

***

> Q. Well, once you've got the internet service, that should be all you need; right?
> A. If I only want to be on the internet, but I do like to watch television as well.
> Q. Well, there's all sorts of TV services that stream over the internet; right?
> A. Yes, and that's how I receive my TV, which is $80 a month for my channels and then
> Q. (Interposing) Who do you pay that [to]—
> A. Hulu.
> Q. So you pay Hulu $80 per month?
> A. Yes.
> Q. Okay. And what else?
> A. CBS, Netflix, Prime. I think those are the ones that I have right now.
> Q. And those are $25?
> A. Each one has its own price, but they add up—

- 14 -

Q. (Interposing) To $25.

A. –yes.

Q Anything else?

A. I'm not recalling. I'm not sure. . . .

Q. So if we add those figures up, that should come to $155 per month; right?

A. Okay.

Q. Instead of the $215 that you've got between cable/internet, internet access, and these special channels?

A. (Thereupon no response from the witness.)

\*\*\*

Q. So that $140 figure [for Cable/Internet] should be $80 because that's what you pay for Hulu; right?

A. Okay

From the foregoing testimony, Wife's claim per month for cable, internet, and streaming applications, total $155.00, not $215.00. As such, these expenses should be reduced by $60.00, *i.e.*, $215.00 minus $155.00.

As to Wife's claim of $325.00 per month for therapy, this amount supposes that Wife will attend four therapy sessions per month at $75.00 per visit, which totals $300.00 not the $325.00 claimed. Regardless, at trial, Wife testified that she currently attends therapy only every other week:

Q. And how often do you go to therapy?

A. . . . I was seeing her every week until I started to have to make more frequent trips and between our two schedules, it dropped back to about every other week.

Q. And how much does that cost per visit?

A. It's $75 per visit.

Based on Wife's testimony, the amount claimed for therapy should be reduced from $325.00 to $150.00.

Although there is no doubt that Wife has need of alimony *in futuro,* based on the foregoing analysis, her claimed monthly expenses should be reduced by a total of $899.00, *i.e.*, $45.00 should be deducted to correct the trial court's erroneous calculation; "Personal" expenses should be reduced by $350; "Drug & Prescription" expenses should be reduced by $269.00; Cable, Internet, and Television expenses should be reduced by $60.00; and "Therapy" should be reduced by $175.00. As such, we modify the trial court's award of alimony *in futuro* from $4,350.00 to $3,451.00 per month. *See, e.g., **Nelson v. Nelson**,* 106 S.W.3d 20 (Tenn. Ct. App. 2002) (modifying the amount of alimony awarded by the

- 15 -

trial court); ***Hiscock v. Hiscock***, No. M2005-01489-COA-R3CV, 2006 WL 3007518 (Tenn. Ct. App. Oct. 19, 2006) (same).

## B. Length of Alimony

Turning to Husband's second issue, wherein he argues that the trial court erred in failing to limit the time period for the alimony *in futuro* award, Husband specifically asserts that his obligation should end upon his retirement. In his brief, Husband states that he "is only requesting that the alimony be able to cease if indeed he truly retires upon receiving full retirement Social Security age of 67." At this point, Husband's retirement plans are speculative. As we have explained, "This Court is not prescient, and speculation is not within its purview." ***Riegel v. Wilkerson***, No. W2013-01391-COA-R3-CV, 2014 WL 546113, *9 (Tenn. Ct. App. Feb. 11, 2014). Because Husband has not yet retired, we decline to modify the trial court's order to terminate his alimony *in futuro* obligation upon his retirement. However, our holding does not preclude Husband from seeking modification of alimony when he does retire. Tenn. Code Ann. § 36-5-121(f)(2)(A) ("An award of alimony in futuro shall remain in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances."). Regardless, under Tennessee Code Annotated section 36-5-121(f)(3), "[a]n award for alimony *in futuro* shall terminate automatically and unconditionally upon the death or remarriage of the recipient [or] . . . upon the death of the payor." Accordingly, to the extent the trial court allowed the alimony award to continue indefinitely, it is modified to terminate on Wife's death or remarriage, or Husband's death, in accordance with the statute.

## V. Attorney's Fees Assessed in the Trial Court

Usually, in a divorce case, an award of attorney's fees to a spouse constitutes alimony *in solido.* Tenn. Code Ann. § 36-5-121(d)(5) ("Alimony *in solido* may be awarded in lieu of or in addition to any other alimony award, in order to provide support, including attorney fees, where appropriate."). However, in this case, the trial court's order states that, "The Court finds that a portion of the attorney fees incurred by Wife were incurred due to Husband's failure to comply with the Court's Orders and failure to timely and appropriately respond to discovery. The Court hereby orders that Husband pay $20,000.00 of the attorney fees incurred by Wife . . . ." ***Palmer v. Palmer***, 562 S.W.2d 833, 837 (Tenn. Ct. App. 1977) ("No principle is better known than that which states that a Court speaks through its orders and decrees . . . ."). The trial court's order clearly indicates that the award of attorney's fees to Wife is based on Husband's failure to comply with discovery. As such, the $20,000.00 award does not constitute alimony *in solido* under Tennessee Code Annotated § 36-5-121(d)(5); rather, we infer that the trial court made the award under Tennessee Rule of Civil Procedure 37.01, which provides, in relevant part, as follows:[2]

---

[2] The trial court made no finding that Husband was in contempt of its orders.

A party, upon reasonable notice to other parties and all persons affected hereby, may apply for an order compelling discovery . . .

***

(4) Award of Expenses of Motion. If the motion is granted, the court shall, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.

Concerning Husband's alleged failure to fully comply with discovery, we glean some context from the trial court's January 22, 2021 interim order. Therein, the trial court indicated that the hearing giving rise to the order was held "on the 19th day of January 2021 upon Wife's *Motion to Compel Discovery Responses and Motion for Order Requiring Husband to Restore Wife as Beneficiary to Life Insurance*" (emphasis added). Neither of Wife's motions are contained in the appellate record. Regardless, in the January 22, 2021 order, the trial granted Wife's motion to compel discovery, finding that: (1) "Husband failed to respond fully to written discovery propounded to him on September 14, 2020"; and (2) "the time period requested for documents is reasonable." The order further stated that, "within fifteen (15) days of the date of the hearing of the motion," Husband shall provide Wife with the following: (1) "Two (2) years of Navy Federal Credit Union American Express statements prior to the filing of the divorce complaint to present"; "Two (2) years of the statements for his military pensions, 401k and AIG prior to the filing of the divorce complaint to present"; (3) "Two (2) years of cell phone records prior to the filing of the divorce complaint to present"; and (4) "All documents relating to the improvements to the real property." In the January 22, 2021 order, the trial court awarded Wife $1,505.00 "for her attorney fees incurred in compelling Husband to respond to written discovery." From the foregoing, the January 22, 2021 order was sufficiently clear to put Husband on notice of the particular discovery requests he was required to answer and the timeframe for doing so. We can also reasonably infer that the $1,505.00 attorney fee award was warranted because Husband failed to answer Wife's September 14, 2020 discovery requests. So, as of the entry of the January 22 order, Husband was on notice that he had fifteen days from January 19, *i.e.*, the date of the hearing, to tender the specific documents set out in the January 22 order. By contrast, the trial court's June 6, 2022 Final Decree of Divorce merely states that, "The Court finds that a portion of the attorney fees incurred by Wife were incurred due to Husband's failure to comply with the Court's Orders and failure to timely and appropriately respond to discovery. The Court hereby orders that Husband pay $20,000.00 of the attorney's fees incurred by Wife . . . ." The trial court's Final Decree of Divorce wholly fails to make any findings concerning how Husband failed to comply with discovery after the entry of the January 22, 2021 order. Furthermore, the trial court's

- 17 -

order fails to include any discussion concerning how it arrived at the $20,000.00 amount and also fails to state that the amount awarded was reasonable.

Tennessee Rule of Civil Procedure 52.01 provides that "[i]n all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." "There is no bright-line test by which to assess the sufficiency of factual findings, but the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue." *Lovlace v. Copley*, 418 S.W.3d 1, 35 (Tenn. 2013) (quotation omitted). Otherwise, appellate courts are "left to wonder" about the basis for the trial court's decision. *In re Houston D.*, 660 S.W.3d 704, 721 (Tenn. Ct. App. 2022). This Court has declined to speculate as to a trial court's rationale when we cannot discern the basis for the trial court's decision. *See, e.g., Lugo v. Lugo*, No. W2020-00312-COA-R3-CV, 2021 WL 507889, at *5 (Tenn. Ct. App. Feb. 10, 2021). We have explained:

> "It is this Court's purview to review, not assume or speculate. Without any facts in the trial court's order, we are forced to guess at the rational[e] the trial court used in arriving at its decision. This we cannot do. Accordingly, we conclude that the trial court did not comply with Tennessee Rule of Civil Procedure 52.01."

*Id*. (quoting *Harthun v. Edens*, No. W2015-00647-COA-R3-CV, 2016 WL 1056960, at *5 (Tenn. Ct. App. Mar. 17, 2016)).

"Generally, the appropriate remedy when a trial court fails to make appropriate findings of fact and conclusions of law pursuant to Rule 52.01 is to 'vacate the trial court's judgment and remand the cause to the trial court for written findings of fact and conclusions of law.'" *Manning v. Manning*, 474 S.W.3d 252, 260 (Tenn. Ct. App. 2015) (quoting *Lake v. Haynes*, No. W2010-00294-COA-R3-CV, 2011 WL 2361563, at *1 (Tenn. Ct. App. June 9, 2011)). We conclude that the trial court's order does not include sufficient findings and conclusions regarding its award of $20,000.00 in attorney's fees to Wife for Husband's failure to comply with discovery. In the absence of sufficient findings, this Court is not in a position to conduct a meaningful review of the trial court's decision. As such, we vacate the $20,000.00 award and remand for the trial court to enter an order that complies with Tennessee Rule of Civil Procedure 52.01.

## VI. Attorney's Fees on Appeal

As her sole issue on appeal, Wife asserts that Husband should be ordered to pay her attorney's fees incurred in defending this appeal. As this Court has explained:

In divorce proceedings, the recovery of attorney's fees by a litigant is provided for by statute which provides that a spouse seeking enforcement of an alimony or custody award in a decree may be granted attorney's fees in the discretion of the court before whom the action is pending. Tenn. Code. Ann. 36-5-103(c) (2003).

The discretion to award attorney's fees on appeal in a proceeding of this nature rests within the discretion of the Court. *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995). When considering a request for attorney's fees on appeal, we also consider the requesting party's ability to pay such fees, the requesting party's success on appeal, whether the requesting party sought the appeal in good faith, and any other equitable factors relevant in a given case.

*Darvarmanesh v. Gharacholou*, No. M2004-00262-COA-R3-CV, 2005 WL 1684050, at *16 (Tenn. Ct. App. July 19, 2005).

Here, we conclude that Husband sought the appeal in good faith, and he has prevailed on some of his arguments. We are also cognizant of the fact that Wife was awarded sufficient assets in the divorce from which she can pay her attorney's fees. Therefore, we decline Wife's request for appellate attorney's fees.

## VII. Conclusion

For the foregoing reasons, we vacate the trial court's award of $20,000.00 in attorney's fees. On remand, the trial court is instructed to enter an order that makes sufficient findings in compliance with Tennessee Rule of Civil Procedure 52.01. The trial court's award of alimony *in futuro* is modified to $3,451.00 per month and shall continue until Wife's remarriage or death, or Husband's death in accordance with Tennessee Code Annotated section 36-5-121(f)(3). Wife's request for appellate attorney's fees is denied, and the case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed one-half to the Appellant, Scott W. Van Zandbergen, and one-half to the Appellee, Diana Lynn Van Zandbergen, for all of which execution may issue if necessary.

s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE